UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

William Veal                                                CASE NUMBER:

   Plaintiff

Commissioner of Boston Centers for Youth & Families

City of Boston

Martin Joseph Walsh

William Morales

Michael Sulprizio

Lorna Bognanno

Thomas Bowe C.P.A PC

Thomas Bowe

Bonnie Wallace

JANE DOE and JOHN DOE

   Defendants

## VERIFIED COMPLAINT

### INTRODUCTION

Here, the plaintiff's allegations arise from an Oral contractual relationship made by Defendant Lorna

Bognanno on behalf of the defendants City of Boston ("City") , BCYF in 2003 on behalf of Mayor Menino

Administration, Commissioner of Boston Centers for Youth & Families ("BCYF"). This oral contract had

An offer, An acceptance of that offer, Consideration was terminated in bad faith, the breach was

covered by all defendants, the termination of the oral contract is at the heart of plaintiffs' claims.

The oral contract was Breached by the Color of State actors after Defendant Martin Joseph Walsh, William Morales, Michael Sulprizio became the new administration for the City of Boston after January 6,2014.

## THE PARTIES

1. Plaintiff William Veal ("Plaintiff") is a member of a racial minority of a protect class and an individual who is a resident of Massachusetts,  Suffolk County.

2. The Defendant, City of Boston (hereinafter "City "), is a Massachusetts government entity located in Boston, Suffolk County, Massachusetts that operates under the jurisdiction of the Commonwealth of Massachusetts and is a Color of State (Law) actor.

3. Defendant Martin Joseph Walsh ("Mayor") is a white male Boston is a natural person, the Mayor of the City of Boston from 2014 is a resident of Massachusetts whose conduct the City of Boston was responsible and is a Color of State (Law) actor.

4. Defendant William Morales ("Morales") is a Latin individual a citizen of the United States a resident of Massachusetts , is the Commissioner of Boston Centers for Youth & Families from or about 2016 that had the power to make official policy on issues in this complaint ,whose conduct the City of Boston was responsible and is a Color of State (Law) actor.

5. Defendant Michael Sulprizio ("Michael") is a white male, is a resident of Massachusetts was the Administration & Finance Deputy Commissioner from 2015 at The City of Boston, was an employee of the City of Boston and a person (Color of State actor) for whose conduct the City of Boston was responsible whom had the power to make official policy on issues in this complaint.

6. Defendant Lorna Bognanno ("Lorna") is a white female a citizen of the United States a resident of Massachusetts and is the Regional Manager, Operations at The City of Boston, and a person (Color of State / Law actor) for whose conduct the City of Boston was responsible for she had the power to make official policy on issues in this complaint.

7. Defendant Thomas Bowe C.P.A PC ("Thomas Bowe CPA") is an accounting firm owned by Thomas Bowe that conducts business in the state of Massachusetts 1372 Hancock St., Suite 202 Quincy, MA 02169 he had an agreement with Plaintiff and Mattapan Community center which Plaintiff is the President.

8. Defendant Thomas Bowe ("Thomas") a white male and is a citizen of the United States a resident of Massachusetts, an employee and owner of Thomas Bowe C.P.A PC.

9. Defendant Bonnie Wallace ("Bonnie") is an African American female, is a resident of Massachusetts and was a former bookkeeper of Mattapan Community Center Inc.

10. Defendant Commissioner of Boston Centers for Youth & Families ("BCYF") is City of Boston's largest youth and human services agency located in Massachusetts and is a Color of State / Law actor.

11. Defendant "Jane Doe" and "John Doe" The true names and capacities, whether individual, corporate, associate, or otherwise of defendants named herein as John & Jan Does are unknown to plaintiff who therefore sues these defendants by such fictitious names.

## JURISDICTION AND VENUE

12. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. " 1331 et seq.

13. The acts complained of in the complaint occurred in Massachusetts Suffolk county.

14. This Court has jurisdiction over Defendants pursuant to G.L. c. 223 A, § 3(a)(b) and or G. L. c. 223, § 5

STATEMENT OF FACTS

15. Plaintiff had implemented and created several successful programs during the oral contract with the State of Color Defendants in the approximately 17 years the contract was honored such as Day Care, After school, summer camp  programs, Basketball leagues, fund raiser etc.

16. Defendant City of Boston ('City") unconstitutional policies, customs, practices are widespread well settled within the City of Boston offices cause the Plaintiff damages, the City had an official policy adopted,  promulgated by the City to terminate all oral contracts on or about 2016 with plaintiff.

17. The policy and custom defendant City, Mayor, Michael, Lorna, and Morales adopted in 2016 was to not honor any oral contract and not to allow any negotiation for city owned community center agreements this caused injury to plaintiff.

18. The disputed policy and or custom  was the cause and moving force behind the deprivation of plaintiff's constitutional rights. The deprivation resulted from the decisions of those officials whose acts may fairly be said to be those of the municipality defendant City, BCYF, Mayor, Michael, Lorna, and Morales they were the  decisionmaker that possesses final authority to establish municipal policy with respect to the action ordered.

19. Defendants City, BCYF, Mayor, Michael, Lorna, and Morales are liable to a plaintiff cause I was injured by an act performed pursuant to the custom that has not been formally approved by an appropriate decisionmaker because the relevant practices were so widespread it had the force of law.

20. Defendants City, Mayor, Morales, Michael, and Lorna were an official with final policy-making authority that caused the constitutional harm the plaintiff makes procedural and a substantive due process claim.

21. The alleged retaliation resulted from the decisions of an official the defendant Mayor, Michael, Morales  and Lorna whose acts may fairly be said to be those of City of Boston, they had final authority to establish municipal policy with respect to the action ordered they made the final appointment and decision.

*The oral contract made by Defendant Lorna and Plaintiff terms and conditions are below*:

22. *Plaintiff and Mattapan would manage the building, hire the employees for Mattapan, and Plaintiff could take a salary only from Mattapan.*

23. *City of Boston would assume all operating cost, Utility's, and maintenance (Structures, Light, Gas) make all repairs to the building, would be paid by the Taxpayers of the City of Boston to keep building up to code, the City would not receive a percentage of or a commission on the revenues generated from the Willie Veal or community center.*

24. *Plaintiff would create and run all programs through Mattapan such as summer camps, after school program, Gym recording studio etc., Winter and Summer Basketball league, Cook outs, Food Drives, Food give always, Holiday parties for the kids, Winter coat give always, raise money, and insure that Mattapan would write for grant opportunity through Defendant City ,BCYF and other organization.*

25. *Plaintiff would be responsible to make sure all Mattapan employees including himself was paid through Mattapan, Plaintiff would allow Mattapan to keep his salary until Mattapan was financially sound, this went on for 13 years.*

26. *Plaintiff & Mattapan would keep all bookkeeping record, would obtain Insurance policy for liability, property damage.*

27. *BCYF and City of Boston (under Mayor Menino) before termination of the agreement before 2023, would hold a meeting with Plaintiff to discuss and determine if Just cause for termination of the*

agreement was met, plaintiff will have a meeting (Hearing) to determine if just cause were violated and would give Plaintiff a chance to respond.

28. The duration of the lease for the City own property (Community Centers) would be up in 20 years (2023) The lease will be $0 dollars per month. Any and all property or equipment that was purchased with Mattapan's moneys would not belong to Defendants City or BCYF upon termination of agreement Plaintiff & Mattapan would be able to retrieve property.

29. We did not discuss and specify the degree of effort Plaintiff must invest during the life of the contract, for example, full-time effort, part-time effort or that plaintiff must work exclusively pursuant with only defendants City and BCYF.

30. Lorna also stated that on behalf of defendant BCYF and City she had the power to form this agreement with Plaintiff & Mattapan and it would be an Equal Employment opportunity for us.

31. Defendants, BCYF and City or Plaintiff and Mattapan Community Centers will not discriminate with the performance of the agreement. Plaintiff and Mattapan cannot make changes, any renovations without permission from Lorna or BCFY.

32. Plaintiff will have full access to the City owned property times during the lease. The Defendant City and BCYF employee will have access to inspect the facility at all times and be employees paid by the City.

33. The oral agreement cannot be transferred to anyone else Plaintiff and Mattapan has to serve the interest of the residents (Community) of the City of Boston.

34. These were the expectations, explanation of the obligations created by the oral contract. Plaintiff and Mattapan performed all the Terms and conditions of the contract.

*NEW MAYOR 2014*

35. January of 2014 defendant Marty Walsh was elected as City of Boston's Mayor.

36. In 2014,the plaintiff informed Defendant Lorna that "we should put our oral agreement in writing so the new Mayor would be aware of Plaintiff / Mattapan and mayor Menino oral agreement", Lorna stated "there was no need for a written contract".

37. In 2015 Lorna informed plaintiff that Defendant Michael was appointed to be the Deputy Commissioner, Administration & Finance of defendant BCYF.

38. Plaintiff again requested that Lorna put our oral agreement in writing since the new Mayor was hiring a lot of new staff, defendant Lorna  assured Plaintiff "a written contract was not needed".

39. In 2016 Lorna informed Plaintiff "Defendant Morales was appointed to be the new Commissioner of BCYF".

40. In 2016 Defendant City, Mayor, Michael, and his co-employees (Jane & John Does) recommended new policy's that would be implemented under his new leadership, one was to interfere and terminate plaintiff's oral complaint without Due Process and claim it was in the best interest of City, community, and others.

41. Defendant City, Mayor, Morales, Lorna, Thomas, Bonnie, and other employees (Jane & John Does) of BCYF conspired to, (conspiracy existed between at least 6 individual) implemented an unwritten or written  policy to terminate Plaintiffs, Mattapan's and others oral contracts, Michael, Morales, and Lorna were policy makers, this caused plaintiff injury contrary to 42 U.S.C. §§ §§ 1981,1983, 1985(2)(3), MGL 93a and other statues in this complaint.

42. A few months later in 2016 Defendant Morales and Lorna under defendants City, Mayor and Michaels orders, called a meeting with Plaintiff and other community center leaders.

43. Defendant Michael Morales Lorna Jane & John Does conspired with outside individuals that were not employees of Defendant City or BCYF (Thomas & Bonnie) contrary to 42 U.S.C. §§§§ 1981,1983, 1985(2) (3), MGL 93a and other statues in this complaint.

44. The above defendants acts deprived Plaintiff of his equal protection of the laws and of equal privileges and immunities under the laws, they where employees of different companies.

45. Defendants (In Line 44 & 45) caused these acts in furtherance of the object of the conspiracy, the plaintiff has suffered an injury of person, property, and a deprivation of his constitutionally protected right and privileges as a result of the conspiracy.

46. During this meeting Defendant Morales and Lorna stated that Defendant Michael believes it is in the best interest of City of Boston and community, to bring all community centers under one umbrella, all funds raised will be held in one account going forward and City and BCYF will implement some contract changes, without renegotiating contract that are in place.

47. Plaintiff objected and protested this request, informed defendants Lorna, Morales after the meeting that Plaintiff and Mattapan have an oral agree in place until 2023 with defendant City and BCYF, that was put in place by Lorna under Mayor Menino and it should be honored, they agreed.

48. Plaintiff was speaking as a citizen on a matter of public concern ,Plaintiff reasonably relied to his detriment on the representations made to him by defendant Morales and Lorna.

49. Plaintiff informed defendants Lorna and Morales that under Plaintiff being the President of Mattapan our programs were finally financially sound after over 13 years of building it, and we are generating great profits created under my guidance for over 17 years.

50. Plaintiff went on to inform defendant Morales and Lorna that the plaintiff would start taking a $90,000 salary as President starting in January 2018, Morales was shocked that I had had not been taking a salary for over 17 years.

51. Defendant Morales and Lorna misused plaintiff's confidential information, Plaintiff relied on defendants Morales and Lorna's constructive trust about the Plaintiffs statements about the economic strength of the programs Plaintiff helped to create under the oral contract.

52. Defendants were unjustly enriched at the expense of Plaintiff where his information confidentially given and acquired by defendants was used to the advantage of the defendant at the expense of the Plaintiff, I was the one who disclosed the financial information when they terminated and took over plaintiff's oral contract.

53. Defendant Lorna and Morales also informed us that defendant Mayor and Michael planned on making serious changes to the contracts that are currently in place with defendant City, BCYF and the Community Centers.

*DEFENDANTS MORALES & LORNA NEW CONTRACT REMIDIES GOING FORWARD, STATEMENTS*

54. *Plaintiff , Mattapan, and all other community centers would have to perform (Background checks (Cori & Sori) on each employee and volunteer including myself.*

55. *Plaintiff , Mattapan, and all other community centers would have to pay out of pocket for an Audit each year going forward that would be performed by the Defendant City and Michael Administration & Finance department.*

56. *Plaintiff , Mattapan would have to start paying for some utility's (Electric, Gas, water), nonstructural repairs and maintenance in the near future.*

57. Plaintiff would have to make sure as President of Mattapan that there is a *1-million-dollar Insurance policy for* liability, property damage *and worker's compensation and it must name the defendants City of Boston and BCYF as company's insured under the liability policy.*

58. *Yearly reports and audits of all income raised from the operation of the City owned community by BCYF at the expense of Plaintiffs non-profit which he is the President of (Mattapan).*

59. *The City of Boston and BCYF will not be liable under for any injuries or negligent acts of any community centers.*

60. *Defendants BCYF will collect all moneys from all programs , membership fees, usage, and may implement  rental fees of the community center.*

61. Plaintiff protested *some* these changes and requested a written contract from the City of Boston, BCYF, Morales and Lorna that reflects the oral agreement terms and conditions that I have been working under since on or 2003 with Mayor Menino or negotiate in good faith to reach a new agreement.

62. Plaintiff informed Defendants Morales and Lorna under the oral contract Plaintiff and Mattapan had until 2023 to renegotiate the contract.

63. The defendants became unprofessional,  patronizing and condescending to the plaintiff things quickly became contentious, defendant Morales interrupted plaintiff multiple times," and patronized plaintiff with comments like "if there's something you don't understand about what I said, tell me so I can try to explain it for you." Then he said he would get back to me regarding the contract.

64. Defendants Morales and Lorna promised Plaintiff, I would get a written contract in the next few months that reflected the oral agreement between Plaintiff, Mattapan Defendant Lorna , City and BCYF but they failed to do so.

65. A few weeks later Defendants City of Boston and BCYF under defendant Mayor (Martin Joseph Walsh), Michael, Morales defendant Lorna began to inform several of their employees (Jeff and Jose) to withhold much needed funding (a crippling mechanism) from Mattapan's daycare services and membership fees plaintiff had in place.

66. All Defendants under the guise of "helping" but their intentions were to find irregularity's, stir up trouble and oust Plaintiff and Mattapan from all their programs, services to the community oral agreements and contract.

67. Defendant Thomas Bowes is the CPA for Mattapan Community Center.

68. In 2015 Boston had received 98.7 inches of snow making that winter the snowiest on record behind 1995-1996, when 107.6 inches fell.

69. Several community businesses suffered from their roofs collapsing due to the snow load on their roofs.

70. One of these victims of this was my sister Leah Veal ,she had a commercial property worth approximately $500,000, no mortgage and the roof collapsed.

71. Soon after I went to Tom Bowes and informed him that Mattapan Board had voted to give Leah Veal my sister a First mortgage on or about October 2015.

72. I asked him if he thought it was legal and right, he stated that I should have the board do another vote and that I should not be in the building when they vote, it needs to be independent of the board without Plaintiff, I did so.

73. The board voted to grant the First mortgage again as a fundraising mechanism would give Mattapan income on a monthly basis and Mattapan will be in a first position on the mortgage.

74. The mortgage was never executed or filed with the registry of deeds.

75. Defendant Lorna, Michael and Morales contacted Defendant Thomas Bowes and Bookkeeper Defendant Bonnie and informed them that defendants were trying to find a good reason to terminate Plaintiffs contract and if they had anything, they could use for this purpose let them know.

76. Defendants Thomas, Thomas CPA and Bonnie revealed all proposed transaction that had not been completed, Defendants Morales, Lorna, City, Michael relied on proposed transaction to Terminate plaintiffs' oral contract, which was contrary to all counts in this complaint, example Plaintiff Board voted to give a First mortgage to Leah Veal, but it was never granted.

77. Defendant Thomas and Thomas CPA informed plaintiff he would be retiring soon and that I should start looking for another CPA firm, this was contrary to all counts in the complaint he knew at the time he did not plan on retiring, as he is servicing several community centers of Defendant City and BCYF as they promised him if he would find a reason defendant could terminate plaintiff's oral contract.

78. Defendant Lorna, Michael and Morales also informed Defendant Thomas Bowes and Bonnie that after something nefarious is found on Plaintiff and or Mattapan their contract will be terminated immediately but Thomas and Bonnie will have an option to keep working with defendant City and BCYF.

79. Defendants Thomas Bowe and Bonnie then contacted and informed Defendants Michael, Lorna, and Morales of the boards ideas of granting the mortgage to Leah Veal and stated that they believed this was illegal and criminal conduct.

80. Defendant Lorna, Michael, and Morales under the direction of the City and Mayor then informed Defendants Thomas Bowe and Bonnie to distance their selves from Plaintiff and Mattapan under the guise that Plaintiff and Mattapan was involved in illegal and criminal behavior.

81. Defendants Thomas Bowe and Thomas CPA waisted no time and sent plaintiff a resignation letter on February 20, 2017 (Exhibit 1)  stating that "Enclosed is the Secretary of States report which must be signed and a payment of $15.00. The attorney generals report can be paid for online per the enclosed instructions which is $35".

82. Defendants Thomas Bowe and Thomas CPA February 20, 2016 also stated " Due to in my opinion unethical decisions made by the board, my professional standards prevent me from issuing a review report for fiscal year ending 6-30-16. The report should be filed as soon as possible. Please except my resignation as of this date from my position as the accountant for Mattapan Community Center".

83. Defendant Tom Bowes informed Plaintiff and defendants City, BCYF and others that Plaintiff had directed Mattapan's Board to vote to grant his sister Leah Veal a _non-secured mortgage_ on her commercial property, which was false, it was a secured first mortgage, defendant Bowe knew the falsity of these statements at the time they were made, caused plaintiff injury / damages.

84. On February 23, 2016, a termination letter was written and signed by Defendant Morales on behalf of Defendant City, Mayor, BCYF and 35 Community Centers to Plaintiff, caused plaintiff injury / damages.

85. This letter was written 3 days after Thomas Bowe resignation letter on 02/20/2017, defendants conspired simultaneously, caused plaintiff injury / damages.

86. Defendant Morales intentionally sent the Termination letter to an address that was not Mattapan or the plaintiffs when he knew the correct address  (Sent to Leah Veal Commercial property) caused plaintiff injury / damages.

87. My sister address of her commercial property was only known by defendants Thomas, Thomas CPA, and Bonnie, defendants conspired.

88. Defendants City, Mayor, Lorna, Michael, Thomas, Thomas CPA, and Morales also planned and did benefit by the Breach of Contract and excepted benefit from the unconstitutional behavior, Defendants failed and refused to give plaintiff  access to the site this was a breach, caused plaintiff injury / damages.

89. Defendants City, Mayor, Lorna, Michael, and Morales made it clear to Plaintiff that Mattapan's property that we purchased such as $25,00 Recording studio, $50,000 Exercise equipment, $6000.00 computer equipment, 3 $10,000 Shot clocks would be kept by defendants above, caused plaintiff injury / damages.

90. Plaintiff has not excepted a salary (Before the Termination) so that this equipment could be brought, and Defendants have it in their procession along with the contract's termination plaintiff has been economically injured by their disputed policy incorporated in 2016 regarding rewriting oral contracts.

91. Plaintiff was  intentionally treated differently than others similarly situated individuals and there was no rational basis for the disparate treatment.

92. Defendant Morales informed plaintiff that he and Mattapan was under investigation for criminal conduct for violations of MGL c. 12. 8. And other laws by the attorney general's office, he conspired to caused plaintiff injury / damages.

93. Defendant Morales informed plaintiff that he needed to cut all ties and will reevaluate the situation after he sees the outcome of the investigation by the attorney General regarding Plaintiff or Mattapan, caused plaintiff injury / damages.

94. Plaintiff was not under investigation of the Attorney General's office for violations of MGL 12 § 8, as plaintiff met with the Attorney General's office and they informed him that this was not true.

95. The Massachusetts Attorney General's office also awarded plaintiff with Certificates of Solicitations for Mattapan which he was and still is the president of.

96. Defendants Morales, Lorna, Michael, Thomas denied and conspired to grant plaintiff a name clearing meeting on several occasions, last time was on or about January 6, 2018, caused plaintiff injury / damages.

97. The letter stated the reason was that it had come their attention that Mattapan board had voted to give a family member a First Mortgage and it was presented as a fund-raising opportunity.

98. Plaintiff was targeted by all defendants because of my refusal to allow Mattapan programs moneys raised to be controlled by Defendants City , BCYF, and requesting a written contract that reflected the 2003 oral contract between Defendant City and BCYF made in 2003 by Plaintiff & Lorna, protesting & exercising my constitutional rights.

99. The plaintiff suffered loss of money damages of $90,000 a year from 2018 until 2023 when the oral contract was Terminated for a cause not in the terms and agreement made orally in 2003.

100. Defendants City, Mayor, BCYF , Morales, Michael Lorna knew or should have know that an oral contract was in place since 2003 and they had to honor it.

101. Defendants Morales, Lorna, City and Michael acts were contrary to all counts in this complaint when they encouraged defendants Thomas, Thomas CPA, and Bonnie to conspire terminate their agreement and or distance their selves from Plaintiff and Mattapan, and they did.

102. Defendants further violated the rights of Plaintiff, by making false and derogatory statements to Plaintiffs ex-employees and several community centers staff, because Plaintiff had opposed the intentional racial  discriminatory retaliatory termination of his employment and oral contract by defendants City, Mayor, Lorna, Michael, and Morales, defendants knew the falsity of these statements at the time they were made.

103. The granting of the first mortgage never actually was made to Plaintiff sister Leah Veal.

104. The Defendants City, BCYF, Lorna, Mayor, Morales, Michael engaged in a sovereign act, there is substantial constitutional claim that would support a cause of action pursuant to all counts in this complaint.

105. Under section 1983 is governed by federal law, principles for tolling the limitations period are borrowed from Massachusetts state Contract law for the contract-based claims, which is six years under Mass. Gen. Laws ch. 260, § 2.

106. On or about May 1, 2019 Plaintiff discovered and believed that there was a causal connection between the government harm (Color of State Defendants) and his injury this is a factual issue for the jury.

107. All Defendants launched an intentional Race Discriminatory Retaliatory campaign against the Plaintiff for advocating on behalf of Plaintiff, Mattapan, and the public for equal agreement / contract rights.

108. Plaintiff is also asserting a section 1985(2) conspiracy against the individual defendants Mayor, Michael, Morales, Lorna, Thomas, and Bonnie for engaging in a conspiracy that was contrary to 1985(2).

109. Some of all of the Defendants acts were contrary to conspiracy of retaliation and discrimination that injured the plaintiff.

110. Defendant Morales, Lorna, Michael, Bonnie and Thomas orally informed plaintiff ex-employees and members of the Community Center where plaintiff worked that this could result in them being sued if it allowed Plaintiff on the premises, did business with him or employed plaintiff as late as January 6, 2018.

111. Plaintiff relied on all defendant's false allegations at one time which cause emotional, economic, and other damages to plaintiff.

112. All Defendants aided, abet, incited, compelled, and coerce each other to discriminate, retaliate in pre-post and post-termination of Plaintiff oral Agreement / contract with defendants .

113. Defendants City of Boston under Martin Joseph Walsh BCYF, Lorna, Morales, Michael Sulprizio , they concealed the breach of the oral agreement / contract so plaintiff did not get notice of it until on or about March 25, 2017.

114. Plaintiff received City /BCYF Termination letter from a coworker / employee who said it was floating around the Community Center.

115. The defamatory false statements were intentionally publicized by all defendants the latest wrongful acts alleged occurred on March 28, 2018, plaintiff was subjected to an adverse action, defendants knew the falsity of these statements at the time they were made.

116. The reasons given by all defendants for a decision to terminate Plaintiff are intentional direct discriminatory, Retaliatory pretexts for all counts in this complaint.

117. All Defendants have engaged in post-termination (Since March 28, 2018) retaliatory conduct by encouraging witnesses and other employees' ex-employees and contract holders with defendants not to cooperate with Plaintiff and actively frustrating his ability to gain information and  meetings and resulted in non-employment in the industry.

118. The stigmatizing statements of all defendants was made in conjunction with an alteration of the Plaintiffs legal status, (The termination of the agreement / contract).

119. Defendants Mayor, Morales, Lorna, City and BCYF thereafter sought to fill that position and did with a similar situated person defendants City and BCYF employees.

120. All the defendant's asserted reasons were not the real reasons for terminating Plaintiff and or the oral agreement / contract.

121. All Defendants breached the implied covenant of good faith and fair dealing associated with the oral contract, in an effort to deprive Plaintiffs of the benefit of the contract.

122. The Supreme Judicial Court of Massachusetts tolled all statutes of limitations for 106 days from March 17, 2020 through June 30, 2020.

123. Plaintiffs allege that in wrongfully terminating the oral contract, all defendants exercised ownership, control, dominion over Plaintiffs' oral agreement / contract , to which they had no right of terminating.

124. Plaintiffs complaint and MGL 93A gave all defendants fair notice of what the claims are and the grounds upon which it rests its complaint on.

125. Defendant Morales, Michael & Lorna contact Plaintiff & Mattapan CPA (Thomas, Thomas CPA) and Bookkeeper Bonnie under the guise of "helping" but they pressured them to find information that would lead to Termination of the contract and not to do business any longer with Plaintiff or Mattapan and they conspired and did so.

126. Plaintiff confronted Defendant Thomas, Thomas CPA, and Bonnie about their above action towards plaintiff regarding giving and discussing untrue allegation about the plaintiff Bookkeeping records, this cause Thomas, Thomas CPA, and Bonnie to engage in discrimination and retaliation acts toward me.

127. Plaintiffs 93 A claim arises out of Plaintiff, being engaged in trade, commerce, and business with all defendants.

128. Plaintiff sent all defendants a MGL 93A demand letter for relief before the complaint was filed, identifying to all parties, and reasonably describing the unfair or deceptive act or practice relied upon.

129. All Defendants egregiously breach the contract and serious misrepresentation of key elements in a transaction which amounted to egregious professional negligent misrepresentation.

130. Defendants Mayor, Michael, City, BCYF Lorna  and Morales were supervisor, their subordinate's misconduct defendant Lorna occur at the supervisor's direction and with the supervisor's knowledge and consent they facilitated, approved, condoned, conspired, and turned a blind eye toward it.

131. Defendants Thomas, Thomas CPA and Bonnie acts of reporting Plaintiffs and Mattapan's Bookkeeping records and transaction gave birth for plaintiff and Mattapan's termination of their oral agreement.

132. Persons situated similarly in all relevant aspects were treated differently because they were able to renegotiate their contract with defendants and it was not interfered with, defendants did not make statements of Bookkeeping accounts that did not exist, their actions were a pretext for all counts in this complaint.

133. Plaintiffs civil rights were violated under both sections 1981, 1983 & 1985 as the result of an official policy or custom by all defendants that lead to my injuries and the disciplined conduct was constitutionally protected, that the plaintiff's punishment was motivated, in whole or in part, by their conduct.

134. All Defendants exhibited discriminatory, retaliatory, and racial animus toward Plaintiff on several occasions.

COUNT I

Breach of Contract

BY ALL DEFENDANTS

135. Plaintiffs hereby incorporate by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

136. Plaintiff has performed all of the conditions, covenants, and promises required by it to be performed in accordance with the terms and conditions of the contract until Defendants Terminated the agreement.

137. Defendants, and each of them, breached the oral agreement with plaintiff by failing and refusing to perform in good faith that there predecessor Mayor Menino had with plaintiff by Terminating the contract when they found our Plaintiff was operating under an oral contract.

138. As a result of the breach of the defendants, and each of them, in the obligations pursuant to the oral contract, the entire sum of Plaintiff salary is due until 2023, defendants, and each of them, is now due, owing, and unpaid demand has been made on defendants, and each of them, for repayment, but defendants, and each of them have failed and refused and continue to fail and refuse, to repay and even communicate with plaintiff.

139. Under the contract Plaintiff and Defendants had negotiations, the course of performance, throughout the prior course of dealing with each other.

140. All the defendants breached the oral contract when they intimidated, interfered with, oppressed, impeded discriminated, retaliated, and  threatened the exercise or enjoyment of Plaintiff legally protected Constitution State & Federal rights.

141. Defendants breach were intentional, malicious, willful, wanton, obdurate, and in gross and reckless disregard of Plaintiffs constitutional rights.

142. Defendants breach was irreplicable and not speculatively injury to plaintiff by their actions including causing loss of contract, potential income, some loss of enjoyment of life, reputation, loss of consortium.

143. Defendants Lorna , Morales, Michael, BYCF, City, Mayor, Thomas, and Thomas Bowe C.P.A PC breached the contract when they terminated and distance their selves from plaintiff for an act that never actually took place.

144. Defendants City, Mayor, Lorna, Morales, Michael, BYCC , Morales breached the contract with Plaintiffs when they withheld daycare service, membership fee.

145. Defendants breached the oral contract with plaintiff when their acts above where within the penumbra of a common law, statutory, or other established concept of unfairness and was immoral, unethical, oppressive, and unscrupulous and it caused substantial injury to their competitor which was the plaintiff.

146. Defendants breach was deliberate attempt to obtain the benefits of the contract, and to avoid fulfilling its own obligations under it, rising to the level of culpable conduct.

COUNT 2
BREACH OF IMPLIED COVENANT OF GOOD FAITH & FAIR DEALINGS
BY ALL DEFENDANTS

147. Plaintiffs hereby incorporate by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

148. Defendants ignored and declined plaintiffs clear, rational, and good faith efforts to resolve the contractual relationship between the parties and put forth inaction to communicate with plaintiff.

149. The party's in this matter included an implied Covenant of good faith and fair dealings.

150. Pursuant to the party's agreement Plaintiff was entitled to enforce and contractual obligations Fulfill his  obligations without interference, Discrimination, Retaliation and have equal opportunities until 2023.

151. It was defendant's duty of good faith and fair dealing implied in the oral Agreements upon reasonable request, engage in reasonable efforts to arrive at a reasonable agreement to resolve the contract dispute, rather than continuing to assert Termination and not resolve this issue.

152. Defendants destroyed and injured the right of the Plaintiff to receive the fruits of the oral agreement / contract.

153. Pursuant to the party's oral agreement all defendants have failed to perform their duties incompletely and improperly when they unjustifiably failed to adhere to the terms of the agreement and terminated plaintiff oral contract.

154. Defendants took an unwarranted view of their contractual rights, Defendants thwarted conclusion of the oral agreement as pretext to obtain more favorable terms of the oral agreement.

155. Defendants breached duty of disclosure, and was a wrongdoer concealed the existence of a cause of action through an affirmative act done with the intent to deceive, when they informed plaintiff, he was under investigation by the attorney general's office and the contract was terminated merely because a vote from the Plaintiffs board had occurred to grant a mortgage that never happened.

156. Defendant's inaction constituted a breach of the implied covenant of Good Faith & Fair Dealings.

COUNT 3

42 U.S.C 1981 DISCRIMINATION , RETALIATION & DISPARAGE IMPACT

CONTRACTUAL RELATIONSHIP

BY ALL DEFENDANT

157. Plaintiffs hereby incorporate by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

158. Plaintiff engaged in activities protected by section 1981and was subjected to an adverse employment action there is a causal connection between the two and was subject to discrimination and retaliation by the defendants.

159. Defendant possessed an intent to discriminate on the basis of race, the discrimination concerned one or more of the activities enumerated in the statute ( the making and enforcing of a contract).

Defendants blocked the creation of and impaired, Plaintiffs' contractual relationships by

Terminating the oral contract.

160. The defendant may say they are not Plaintiff employer, were this a Title VII case, these defendants

probably would be correct. *See Sauers, 1* F.3d at 1125; *Horney,*95 F. Supp.2d at 3336. However, as

indicated, even though Title VII cases appear to provide the analytical framework,

section 1981 liability can attach to an <u>individual as well as to an employer</u>. *See Allen,*928 F.2d at

983; *Johnson,*843 F. Supp. at 978. Hence, the court has considered section 1981 retaliation liability

with respect to each of the defendants and its conclusion mirrors its analysis of section

1983 retaliation. *Powell v. City of Pittsfield*, 143 F. Supp. 2d 94, 128 (D. Mass. 2001)

161. As a result of defendant's discrimination and retaliation in violation of Section 1981, the Plaintiff

have been denied employment opportunities providing substantial compensation and benefits,

thereby entitling Plaintiff to injunctive and equitable monetary relief an award of punitive damages.

162. Plaintiff seeks reparative relief aimed at restoring him to the position he would have occupied but

for the due process , Disparage Impact, discrimination, and retaliation violations.

163. All defendant stigmatizing statements that Plaintiffs in this complaint were made public and were

false, defendants knew the falsity of these statements at the time they were made in violation of 42

USC 1981 & 1983.

164. A reasonable jury and so should this court. infer that all defendants retaliated against Plaintiff in

violation of section 1981 and 1983 and City of Boston should be liable for having an official policy

of retaliation which caused the alleged injury and so should this court.

165. The court, therefore, recommends the adoption of the Ninth Circuit's conclusion that the amended

section 1981 overturns *Jett's* holding that section 1983 provides the exclusive federal remedy

against state actors for violations of section 1981 rights. At bottom, this court believes,

section 1981 now contains an implied cause of action against state actors. *Powell v. City of*

*Pittsfield*, 143 F. Supp. 2d 94, 112 (D. Mass. 2001).

166. Defendants intentionally discriminated and retaliated against Plaintiff for protesting his grievances

with defendants, Defendants interfered with an existing oral contract.

COUNT 4
42 U.S.C 1983 DISCRIMINATION , RETALIATION & DISPARAGE IMPACT
BY ALL DEFENDANTS

167. Plaintiffs hereby incorporate by reference each of the allegations set forth in the preceding

paragraphs as if realleged fully herein.

168. "Since the passage of the Civil Rights Act of 1991, however, several courts, as indicated, have

concluded that the amended section 1981 implies a separate cause of action against state

actors." *Powell v. City of Pittsfield*, 143 F. Supp. 2d 94, 113 (D. Mass. 2001)

169. Plaintiff  was deprived of an individual interest that is encompassed within the First and Fourteenth

Amendment's protection of  life, liberty, or property and  the procedures available to him did not

provide due process of law, plaintiff had a right to continued employment to the oral contract and

Liberty interest in his reputation.

170. All defendants were personally involved in the harm to plaintiff reputation, the plaintiff will

demonstrate that through all Defendants *deliberate* conduct, they and the  municipality was the

moving force behind the injury alleged to plaintiff.

171. The procedures available to Plaintiff to challenge that deprivation were inadequate.

172.  The plaintiff put all defendants on fair notice of a procedural violation which  afforded him due

process.

173. Plaintiff is a member of a protected class, an adverse employment action was taken against

Plaintiff, he was qualified for the Job and the position was filled by a person whose qualifications

were similar to Plaintiffs. *See Rodriguez-Cuervos v. Wal-Mart Stores, Inc. Powell v. City of Pittsfield*,

143 F. Supp. 2d 94, 115 (D. Mass. 2001)

174. Defendants Mayor, Michael, Morales, and Lorna was involved in the decision making to encourage

to seek Termination of plaintiffs and Mattapan's oral contract even though Plaintiff  and Mattapan

was qualified to continue with the oral contract.

175. Defendants Mayor, Michael, Morales, and Lorna decision to terminate all oral contract  can

reasonably be inferred to constitute municipal policy.

176. The treatment that Plaintiff received, and defendants' discharges were carried out by Defendant in

retaliation for the exercise of Plaintiffs civil rights secured by the United States & Massachusetts

Constitution.

COUNT 5
MGL 93A, MASS. 260 et seq CONTRACT LAW
BY ALL DEFENDANTS

177. Plaintiffs hereby incorporate by reference each of the allegations set forth in the preceding

paragraphs as if realleged fully herein.

178. Defendants violated chapter 93A through its deceptive conduct when terminating the oral contract,

by asserting that the attorney general had plaintiff under investigation for violations of MGL c.12 8,

that plaintiff had violated the terms & conditions of the oral contract when the board voted to

grant a first mortgage to Leah Veal.

179. Actions of contract, other than those to recover for personal injuries, founded upon contracts or

liabilities, express or implied, except actions limited by section one or actions upon judgments or

decrees of courts of record of the United States or of this or of any other state of the United States, shall, except as otherwise provided, be commenced only within six years next after the cause of action accrues MASS. 260.

180. Defendants Unfair & Deceptive acts were malicious, and oppressive, justifying an award of punitive damages, attorney's fees so that defendants and each of them will not engage in such conduct in the future and make an example of them.

181.  Defendants Terminated the agreement for the specific purpose of depriving plaintiff of its funds, to harass plaintiff in its business, , all with malice toward plaintiff.

182. Defendants breach was with an extortionate quality that give it the rancid flavor of unfairness and deceptive.

183. All Defendants conduct was in disregard for Plaintiffs known contractual arrangements intended to secure benefits from the breach undertaken was a leverage to destroy the rights of Plaintiff to the agreements while the agreement was still in effect was a coercive quality that, with other facts in this complaint warrants a finding of a violation of unfair and deceptive acts and practices.

184. A party is not exonerated from chapter 93A liability because there has been no breach of contract. The law of Massachusetts has been clear on this point since at least the decision of the Supreme Judicial Court in Jet Line Services, Inc. v. American Employers Ins. Co., 537 N.E.2d 107 (Mass. 1989) *Nasco, Inc. v. Public Storage, Inc.*, 127 F.3d 148, 152 (1st Cir. 1997)

185. Plaintiff was particularly vulnerable; the defendant's unfair conduct gave it greater leverage.

186. Defendants unfair or deceptive conduct had an adverse effect on the plaintiff.

187. Defendants wanted a better contract that gave BCYF and City greater benefits and control over Plaintiffs current contract, defendant implemented an Unfair & Deceptive scheme to terminate

plaintiffs contract and replace him with other City and BCYF employees to carry out plaintiffs'

programs.

188. Plaintiff's allegations of Breach of Contract, Breach of implied Faith & Fair Dealings, Discrimination,

Retaliation, Unjust Enrichment, infliction of emotional Distress & causing a Hostile Work

Environment states a colorable claim for relief under Chapter 93A.

COUNT 6
UNJUSTLY ENRICHED
DEFENDANTS,MAYOR,BCYF,MICHAEL,MORALES,LORA COLOR OF STATE /LAW ACTORS

189. Plaintiffs hereby incorporate by reference each of the allegations set forth in the preceding

paragraphs as if realleged fully herein.

190. All Defendants gained a benefit of the termination of the oral agreement conferred upon by the

plaintiff; an appreciation or knowledge by all the defendant of the benefit of the breach of the oral

agreements (Contract).

191. All the defendant's acceptance had the knowledge of the benefits under the circumstances that

would be inequitable without payment for its value that plaintiff put forth for over 17 years of

creating and help run the program's that the defendants now profit from, Defendants were unjustly

Enriched and unjust detriment to another party the plaintiff.

192. Defendant ignored the  equity and morality of plaintiff's oral contract, plaintiffs sweat equity was a

benefit to the defendants as a matter of law whether styled as unjust enrichment, quasi-contract,

disgorgement, or restitution.

193. Defendant has received a benefit that is significantly greater than the plaintiff's loss and justice so

requires, "the defendant may be under a duty to give the plaintiff the amount by which he has been

enriched." (quoting Restatement of Restitution § 1 (1937)).

194. The defendant was unjustly enriched when it commissioned the plaintiff under the oral contract to implement, create, several programs that are producing money for the center on the understanding that the defendant would honor the oral contract until 2023 when plaintiff had a chance to collect a $90,000 salary from 2018 until 2023.

195. The plaintiff will prove the Color of state were unjustly enriched by introducing evidence of the amount of profits the oral contract produced and the salary plaintiff would have earned had the defendant honored the oral agreement.

196. Plaintiff will present evidence of the value of his labor, outer pocket materials, other costs and the value of the benefit conferred to the oral contract that was terminated at trial.

197. A complaint may properly assert a claim for both breach of contract and unjust enrichment, even accepting that a plaintiff can only recover under one of those theories. Lass v. Bank of Am., N.A., 695 F. 3d 129, 140 (1st Cir. 2012); see also Aetna Cas. Sur. Co. v. P & B Autobody, 43 F. 3d 1546, 1555 (1st Cir. 1994).

COUNT 7

DISCRIMINATORY CONSPIRACY IN VIOLATION OF
42 U.S.C. § 1985
BY ALL DEFENDANTS

198. Plaintiffs hereby incorporate by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

199. Defendants conspire to directly or indirectly, to deprive Plaintiff of the equal protection of the laws and of equal privileges and immunities under the laws all defendants caused to be done acts in furtherance of the object of the conspiracy, the plaintiff has suffered an injury of person, property, and a deprivation of his constitutionally protected right and privileges as a result of the conspiracy.

200. All defendants showed discriminatory or racial animus toward Plaintiff through their acts alleged in this complaint.

201. Defendants had the knowledge of wrongs that would be and was visited upon plaintiff, and although aware of the wrong, Defendants Thomas , Bonnie Morales and Lorna took no action (neglect to prevent) , to stop defendant Michael from implementing the plan of overhauling THE City & BCYF contracts with Community Centers and individuals including Plaintiffs and Mattapan oral contract.

202. First, the plaintiff must allege a conspiracy; second, he must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, he must identify an overt act in furtherance of the conspiracy; and finally, he must show either injury to person or property, or a deprivation of a constitutionally protected right. *Teshome v. Me. State Prison*, 1:20-cv-00150-JAW, at *11 (D. Me. Jan. 14, 2021)

COUNT 8
RETALIATORY CONSPIRACY IN VIOLATION OF
42 U.S.C. § 1985
BY ALL DEFENDANTS

203. Plaintiffs hereby incorporate by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

204. The First Circuit has interpreted this section as providing a remedy for a plaintiff who has been retaliated against for having instituted a prior lawsuit. *See Irizarry v. Quiros,*722 F.2d 869, 871 (1st Cir. 1983). *See also Wright v. No Skiter Inc.,*774 F.2d 422, 426 (10th Cir. 1985) (similar). Furthermore, because the Supreme Court has held that class-based discrimination is not a necessary element of a section 1985(2) claim, *see Kush,*460 U.S. at 721, 103 S.Ct. 1483, the lack of

discriminatory animus does not doom this cause of action. *Powell v. City of Pittsfield*, 143 F. Supp.

2d 94, 131 (D. Mass. 2001).

205. The instant facts fall within section 1985(2)'s prohibitions. Plaintiffs have alleged that they were

denied reemployment Termination of contract defendants' conduct was designed to intimidate and

deter, plaintiffs clearly were injured in his person or property (Economic Damage)." There is no

question of the general power of Congress in this area, it must equally justify penalizing those who

would restrain.

206. Nor are we concerned that certain federal statutes already provide remedies for such injury. *See,*

*e.g.,* Labor Management Relations Act, 1935, section 8(a)(1) Passing any question of double

recovery, this is not improper duplication. First, subsection 1985(2) applies to "conspiracies," not to

individual actions, and second, the Civil Rights Acts often parallel federal statutory rights. *See Maine*

*v. Thiboutot,* 1980, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555. *Irizarry v. Quiros*, 722 F.2d 869, 872

(1st Cir. 1983).

207. Defendants may cite cases holding that employees of a single corporation, acting within the scope

of their employment, cannot "conspire" for section 1985 purposes. *E.g., Girard v. 94th St. and Fifth*

*Ave. Corp.,* 2 Cir., 1976, 530 F.2d 66, 70-71, *cert. denied,*425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d

798; *Dombrowski v. Dowling*, 7 Cir., 1972, 459 F.2d 190, 196. These holdings are based on the

common law conception of a corporation as a single entity acting with one purpose. If Defendant

rely on these cases, they will be misplaced. Here there were several corporations, City, BCYE,

Thomas CPA, who were named defendants and who were engaged in the discriminatory retaliatory

activities. And, although there is evidence that one or more individual holds important positions in

the 3 corporations , it is equally clear that the corporations were separate business entities, under

separate management, performing separate functions, not exclusively for each other *Irizarry v. Quiros*, 722 F.2d 869, 872 (1st Cir. 1983).

208. When the defendant's conduct is shown to be motivated by evil motive or intent which it was or when it involves reckless or callous indifference to Plaintiffs federally protected rights of others. The evidence fully supports punitive damage award, and, where the statute permits both punitive damages and attorney's fees *Irizarry v. Quiros*, 722 F.2d 869, 872-73 (1st Cir. 1983)

COUNT 8
INJUCTIVE RELEIFE
DEFENDANTS CITY AND BCYF

209. Plaintiffs hereby incorporate by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

210. plaintiff has satisfied four criteria in order to be entitled to a preliminary injunction. (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction." *Women's Community Health Ctr., Inc. v. Cohen,*477 F. Supp. 542, 544 (D.Me. 1979) (citations omitted). *LeBeau v. Spirito*, 703 F.2d 639, 642 (1st Cir. 1983)

CLAIMS FOR RELIEF

WHEREFORE, Plaintiff prays that this court grant preliminary relief, a final judgment in favor of Plaintiff against all defendants and order that:

A. That each defendant pays Plaintiff in an amount to be determined at trial.

B. That each defendant pays Reasonable costs, Back Pay, Front Pay, value of the oral contract, attorney fees incurred in bringing this action.

C. That each defendant pays Compensatory damages , actual damages, attorney fees, out of pocket expense, and punitive damages in an amount to be proved at trial.

D. That each defendant pays pre- and post-judgment interest in all monetary amounts awarded in this action.

E. That each defendant pays Injunctive relief, Treble and Triple Damages on all counts.

F. Defendants City, BCYF Reinstalment of plaintiff to his original position and oral agreement / contract.

G. For such other and further relief as the court may deem just and proper.

JURY DEMAND
Plaintiff claims a trial by jury on all triable issues.

William Veal    /S/William Veal

1434 Blue Hill Ave, APT 1

Mattapan, Ma 02126

617-908-5555

Mrveal@yahoo.com

