# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:21-CV-10265-MBB

WILLIAM VEAL,
        Plaintiff,

v.

COMMISSIONER OF BOSTON
CENTERS FOR YOUTH & FAMILIES,
CITY OF BOSTON,
MARTIN JOSEPH WALSH,
WILLIAM MORALES,
MICHAEL SULPRIZIO,
LORNA BOGNANNO,
THOMAS BOWE C.P.A PC,
THOMAS BOWE, BONNIE WALLACE,
JANE DOE and JOHN DOE
        Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITY OF BOSTON'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Defendants City of Boston (the "City"); Boston Centers For Youth & Families

("BCYF"), a City department; Martin Joseph Walsh, the Mayor of the City of Boston

from 2014 to 2021; William Morales ("Morales"), the Commissioner of the BCYF;

Michael Sulprizio ("Sulprizio"), the former Deputy Commissioner of the BCYF; and

Lorna Bognanno ("Bognanno"), the Regional Operations Manager of the City of Boston (

collectively, the "City Defendants")[1] submit this memorandum of law in support of their

---

[1] Although the Complaint does not specify, it is clear that this Complaint is brought against Martin Joseph Walsh in his official capacity as Mayor of Boston, against William Morales, as the Commissioner of the BCYF, against Michael Sulprizio as the Deputy Commissioner of the BCYF and Lorna Bognanno as the Regional Operations Manager of the City of Boston, not in their individual capacities. Compl. ¶¶ 1–6, 10.

motion to dismiss all the counts Plaintiff William Veal ("Mr. Veal") asserted against them in his Compliant.  Briefly stated, Mr. Veal asserts claims in contract, quantum meruit, unfair trade practices, and under federal civil rights statutes arising from the City's termination of an oral contract with his organization.  Pl.'s Compl.  ( "Compl.") Taking all the allegations as true, Mr. Veal has not alleged an enforceable municipal contract which complies with the statutory requirements.  Also, he fails to allege which rights were violated and failed to allege the required elements for the civil rights claims. Therefore, all the counts should be dismissed.

## I.  STATEMENT OF ALLEGED FACTS[2]

The following statement of facts is drawn from Mr. Veal's allegations in his Complaint. Mr. Veal, "an individual, who is a member of a protected racial minority," resides in Suffolk County, Massachusetts. Compl. ¶¶ 1–6. He was the President[3] of the Mattapan Community Centers, Inc. ( "MCCI" ), a non-profit organization. Pl.'s Ex. 2. Mr. Veal brought this action on behalf of himself - MCCI is not a listed party.

The allegations in the Complaint "arise from an Oral contractual relationship made by Defendant Lorna Bognanno on behalf of the defendants City of Boston [] BCYF in 2003 on behalf of Mayor Menino['s] administration." Compl. Introduction.  Mr. Veal alleges that "[he] had implemented and created several successful programs during the oral contract" with the City Defendants for providing daycare, after school, summer camp, basketball leagues, and fundraisers for about 17 years.  Compl. ¶15.  He alleges that "[the] oral contract [was] made by Bognanno", through which Mr. Veal's non-profit

---

[2] As required by Rule 12(b)(6), Defendant accepts as true, solely for the purpose of the instant motion, all factual allegations in the Complaint.Fed. R. Civ. P. 12.
[3] It is unclear based on the complaint whether the Plaintiff still holds the position of President of Mattapan Community Centers.

organization MCCI would serve as a site council for the BCYF.  Id.,  Pl.'s Ex. 2.  The alleged terms of the oral agreement, styled as a lease, are described in the complaint. Compl.  ¶¶ 22–34. In 2014, after the election of Martin Walsh as Mayor, and again in 2015, Mr. Veal asked Bognanno to put the oral agreement into writing but was told there was no need for a written contract." Id. ¶ 36 & 38.

        In 2016, the City Defendants "recommended new policy" that would "terminate Plaintiffs, Mattapan's and others oral contracts." Id. ¶¶ 40–41.  A few months later in 2016, Bognanno and Morales held "a meeting with [Mr. Veal] and other community center leaders" to alert them of this new policy to bring all community centers under one umbrella and to alert them the City "will implement some contract changes." Id. ¶¶ 42, 46, 53.  The required terms for the new contracts promulgated by the City are listed in the complaint.  Id. ¶¶ 54–60.  At said meeting, Mr. Veal "objected and protested" this new policy, maintaining that his oral agreement and its terms were effective until the year 2023. Id.  ¶ 47.  At some point in the conversation, defendants Morales and Bognanno allegedly told Mr. Veal that he would get a written contract in the next few months that reflected the oral agreement, but they failed to do so.  Id. ¶ 64.

        Prior to the 2016 meetings about contracts with City employees, Mr. Veal had informed informed Defendant Thomas Bowe ("Bowe"), who served as MCCI's accountant, that the Board of MCCI had voted to give Mr. Veal's sister a loan secured by a mortgage in October 2015.  Id. ¶¶ 68–71.  At some subsequent point, employees from BCYF asked Bowe and Defendant Bonnie Wallace ("Wallace"), a MCCI bookkeeper, if they knew any information about MCCI that would support terminating their relationship or occupancy of the community center.  Id. ¶ 75.  Bowe and Wallace revealed the story of

MCCI's proposed loan to Mr. Veal's sister to the City, and defendants Morales, Sulprizio, and Bognanno relied on that vote to terminate the alleged oral agreement between BCYF Community Center and MCCI.  Id. ¶¶ 76, 79; Pl.'s Ex. 2.  Mr. Veal attached the disassociation letter signed by Morales, dated on February 23, 2017.[4]  Compl., ¶ 84; Pl.'s Ex. 2.  The letter said that "[BCYF ] has decided to disassociate itself from [MCCI]. BCYF will no longer be partnering with [MCCI], which previously served as a site council and 501(c)(3) partner for [two BCYF community centers]." The letter said that because MCCI voted to grant the mortgage to Mr. Veal's sister,  Mr. Veal had illegally "use[d] charitable assets to advance private interests" and failed to comply with several procedural formalities for engaging in transactions as a non-profit. Pl.'s Ex. 2.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Dismissal for failure to state a claim under Rule 12(b)(6) is appropriate where, taking the allegations of the complaint as true, the plaintiff cannot as a matter of law demonstrate that he is entitled to relief.   See Id. at 555 & n.3. Courts first "distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).' " Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  Courts then "determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable.'" Id.  at 103.  "Dismissal for failure to state a claim is appropriate if the complaint does not set forth factual allegations, either direct or inferential, respecting each material

---

[4] Mr. Veal states that the letter was dated February 23, 2016 in his complaint, but the letter is dated February 23, 2017.

element necessary to sustain recovery under some actionable legal theory." <u>Lemelson</u> v.

<u>U.S. Bank Nat'l Ass'n,</u> 721 F.3d 18, 21 (1st Cir. 2013).

III. **ARGUMENT**

Dismissal of all eight counts of Mr. Veal's Complaint is appropriate because the alleged facts demonstrate that Mr. Veal will be unable to prove any of the claims in his Complaint. The counts include contract claims, a claim under Massachusetts General Laws Chapter 93A, unjust enrichment, and civil rights claims under 42 U.S.C. §§ 1981, 1983, and 1985.  The contract claims must fail because Mr. Veal does not allege any contract between himself and the City, nor does he allege any enforceable contract against the City on the part of the organization he was a part of since a lease or other long-term contract with a municipality must be in writing and conform to other statutory criteria. The G.L. c. 93A claim must fail both because the Plaintiff has not alleged that the City Defendants' behavior was unfair under the meaning of the statute, and because a municipality is not amenable to suit under c. 93A when it is serving a governmental purpose.  The civil rights claims must fail because Mr. Veal has failed to allege sufficient facts to demonstrate the required elements: there is neither discrimination nor retaliation against him for a 42 U.S.C. § 1981 claim; there is no constitutionally recognized interest to support his due process claims under 42 U.S.C. § 1983; and there is neither conspiracy nor class-based (racial) animus behind the alleged conspirators' action for 42 U.S.C. § 1985 claims.

A.  **<u>All Counts Seeking to Enforce an Alleged Oral Contract Between the City and MCCI Must be Dismissed Because MCCI is Not a Plaintiff and Such Counts Do Not Allege Individual Claims of the Plaintiff Mr. Veal.</u>**

Based on his Compliant, Mr. Veal's Contract Claims must be dismissed for lack of standing because he was not a party or representing the contract party.  In the Compliant, the contract Mr. Veal alleges is between MCCI and the BCYF.  Compl.  Intro, & ¶¶ 22–34; Pl.'s Ex. 2. The alleged contract dispute arises from a disassociation letter regarding an alleged oral agreement between BCYF and Mattapan Community Centers, Inc. (MCCI).  Pl.'s Ex.2.  Mr. Veal does not allege that he individually was a party to the contract. Comp. ¶ 1.  MCCI is <u>not</u> a plaintiff in this lawsuit and Mr. Veal is not representing MCCI for this suit, so he would not have standing for his contract claims because Mr. Veal as an individual was not a party of the alleged business/organization agreement between MCCI, a non-profit corporation, with BCYF[5]. Similarly, Mr. Veal does not allege that he was a City employee. Compl.  ¶¶ 25.  Accordingly, at least Counts I, II, III, V, and VI, all of which assert violations of contractual or equitable obligations between the City and MCCI should be dismissed for lack of standing.  See <u>e.g.</u>, <u>Vacca</u> v. <u>Brigham & Women's Hosp., Inc.</u>, 98 Mass. App. Ct. 463, 467 (2020), <u>review denied,</u> 486 Mass. 1108 (2020) (holding that for breach of contract, a plaintiff must demonstrate that there was an agreement between <u>the parties)</u> (underline added).  <u>Double C Entm't, Inc.</u> vs. <u>Palace Theatre Operating Grp., LLC</u>, W.D. Ky., No. 3:11-CV-98-CRS (Nov. 25, 2011) (held that if a plaintiff is not a party to the contract, there is no right to recover damages for the contract's breach and thus the contract claims are dismissed).  Furthermore, the remaining Counts

---

[5] The Complaint also does not allege that Mr. Veal was a third party beneficiary of the alleged contract.

**B.** **Count I (Breach of Contract) Must Be Dismissed Because Mr. Veal Is Not a Party for the Alleged Oral Contract and The Alleged Oral Contract Would Not be Enforceable in Any Event.**

The alleged contract dispute arises from a disassociation letter ending a relationship that Mr. Veal alleges was the subject of an oral agreement between BCYF and Mattapan Community Centers, Inc. (MCCI) of which Mr. Veal was the President. Pl.'s Ex.2. Specifically, he alleges that an oral contract was formed by himself and Defendant Bognanno on behalf of the City and MCCI in 2003. As discussed in Section A above, this breach of contract claim must be dismissed for lack of standing because he was not a party or representing the contract party. But even if Mr. Veal had standing, his "oral" contract would be barred. Specifically, he has not alleged a valid contract made in compliance with statutory requirements for municipal contracts and by a person with authority to bind the City and commit the continued use of a City building to MCCI. See e.g., Int'l Salt Co., LLC v. Boston, 590 F.3d 1, 6 (1st Cir. 2009).

It is well established that "[i]n Massachusetts, a party seeking to enter into a municipal contract has the responsibility of knowing the limitations on a municipality's contracting power, and such party cannot recover on a contract that does not comply. Id., at 6 (citation omitted). Massachusetts courts "have consistently and punctiliously held that one dealing with a city or town cannot recover if statutory requirements such as are contained in the [city's] charter have not been observed." United States Leasing v. City of Chicopee, 402 Mass. 228, 231 (1988) (citations omitted). A party dealing with a public employee must, "at its peril" ascertain the extent of statutory authority possessed by the employee. Potter & McArthur, Inc. v. City of Boston, 15 Mass. App. Ct. 454, 459 (1983), citing Wormstead v. Lynn, 184 Mass. 425, 428 (1903). A city is not estopped by

a violation of duty on the part of a city employee. Id. Here, the alleged oral contract between Mr. Veal and Defendant Bognanno clearly fails that test.

First, Ms. Bognanno does not have the authority to grant to any entity the right to occupy and use a City building for twenty years. Such an arrangement is by definition a lease.[6] Under the Boston City Charter, authority to lease City property belongs to the Public Facilities Commission, see Ma. St. 1966. c. 642, s. 12, or whatever City department to which it transfers care, custody and control of the relevant building. Ms. Bognanno is not alleged to be the head of any department.

Second, Massachusetts and City of Boston laws require that the type of contract that Mr. Veal alleges be in writing. The alleged oral contract is plainly a lease or similar right to occupy and operate from a City building.  Under G. L. c. 30B, s. 16, the City could not have validly conveyed the 20 year right to occupy the property without declaring the property available, advertising the opportunity, and notifying the State in writing if it chose to rent out the property for less than fair market value (the case here, since $0 rent is alleged).[7]  If, on the other hand, Mr. Veal chooses to describe this not as a lease but as a 20 year contract for MCCI providing the service of a community center with the service provider entitled to collect user fees, it again violates clear procurement laws. Such a contract would involve well over $10,000 of fees going to MCCI, and therefore G. L. c. 30B would require the contract be in writing and no more than three years long, and the Boston City Charter would require that the contract be in writing and

---

[6] Mr. Veal clearly does not allege that the purported agreement was merely a license, revocable by the City.
[7] At the time of the purported oral contract these rules applied if the value of the rental was greater than $10,000. There is no argument that 20 years of an entire building in Boston was valued at greater than $10,000.

approved in writing by the mayor in order to be enforceable. See G. L. c. 30B, s. 12&17 and St. 1890, c. 418, § 6, as amended by St. 1939, c. 156 § 2 & St. 1998, c. 262, § 1.

> [A]ll contracts made by any department of the City of Boston or by any officer,. . . shall, when the amount involved is $10,000 or more, . . . be in writing; and no such contract shall be deemed to have been made or executed until the approval of the mayor of said city has been affixed thereto in writing and the auditor of said city has certified thereon that an appropriation is available therefore.

Id.

The Supreme Judicial Court of "construed the phrase 'amount involved' to be intentionally imprecise, and concluded that it refers to the value to the contractor, no matter the source." Park Drive Towing, Inc. v. City Of Revere, 442 Mass. 80, 85 (2004). Thus, if the purported oral agreement is not a lease, which would have been invalif for violating G. L. c. 30B, s. 16, it was a contract with an amount involved in excess of $10,000 and thus invalid under G.L. c. 30B and the City Charter.[8]

Therefore, Count I Breach of Contract must be dismissed because Mr. Veal has not alleged a written contract, which is required for a purported 20 year contract to be enforceable.

**C. The Court Must Dismiss Count II, Breach of Implied Covenant of Good Faith and Fair Dealing, Because There Is No Enforceable Contract.**

Count II should be dismissed for the same reasons as Count I - Mr. Veal will not be able to show the existence of a valid contract.  The covenant of good faith and fair dealing is implied in every contract in Massachusetts.  Ayash v. Dana-Farber Cancer Institute, 443 Mass. 367, 385 (2005).  The implied covenant does not create rights not otherwise provided for in an existing contractual relationship, and is only as broad as the

---

[8] Given Mr. Veal's argument that the purported oal contract could support a salary of $90,000 dollars to a single employee in 2018 and beyond, there is no argument that the alleged contract was for less than $10,000.

contract upon which it is based.  Id.  Mr. Veal will not be able to prove that he had a valid contract with the City, thus he cannot recover for an alleged breach of the purported contract's implied covenant of good faith and fair dealing.

**D.  Count III, Violation of 42 U.S.C. § 1981, Must Be Dismissed Because City Defendants Are Amenable For Damages.**

**1.   The First Circuit Has Held That 42 U.S.C. § 1983 Constitutes The Exclusive Federal Remedy For Violation Of The Rights Guaranteed In 42 U.S.C. § 1981 By State Governmental Units.**

The  claim for damages under § 1981 is foreclosed by the First Circuit's decision in Buntin v. City of Boston. 857 F.3d 69, 70 (1st Cir. 2017).  Buntin held that a plaintiff may not bring claims for damages under 42 U.S.C. § 1981 against state actors, including city employees.  Id. The First Circuit rested its decision on that of the Supreme Court in Jett v. Dallas Independent School District, which held that "§ 1981 does not provide an implied private right of action for damages against such officials and that 'the express cause of action for damages created by [42 U.S.C.] § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.'"  Id. at 70–71 (quoting Jett 491 U.S. at 733 (1989). Here, Buntin compels the dismissal of the claim for damages against the Defendants under § 1981 for alleged violations by state actors in their official capacities. 857 F.3d at 75, 76.[9]

**2.   Even if the § 1981 Claim was Valid Mr. Veal has Not Alleged Its Elements**

A plaintiff can recover damages under § 1981 when racial discrimination either prevents a plaintiff from entering a contractual relationship or "impairs a plaintiff's existing contractual relationship."  Alston v. Spiegel, 988 F.3d 564, 564 (1st Cir. 2021).

---

[9] The Plaintiff would have to allege that the Defendants took relevant actions in violation of § 1981 "outside of the scope" of their roles as City employees in order to state a claim against the Defendants under § 1981 in their individual capacities. Buntin, 857 F.3d at 75–76.

A claim brought under § 1981 "must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights." Domino's Pizza, Inc. v. McDonald,546 U.S. 470, 476 (2006).  As such, Mr. Veal has failed to state a claim under § 1981 because he has not alleged that he had rights under the existing contract that he wishes "to make and enforce." Id. at 479–80.

　　　In addition, in order to prove a violation of § 1981, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." Comcast Corporation v. National Association of African American Owned Media, clarified that in140 S. Ct. 1009, 1019 (2020).[10]  Mr. Veal has not alleged facts which allege that but-for Plaintiff's race, the Defendants would not have discontinued MCCI's presence in a BCYF building.  Plaintiff makes conclusory allegations that the termination was racially discriminatory, but the complaint is devoid of any facts which allege racism on the part of the Defendants.[11]  Accordingly, in passing on the motion to dismiss, the court cannot credit the Plaintiff's "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" Alston, 988 F.3d at 564 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  Because Mr. Veal  has not plead "enough facts to state a claim for relief" under § 1981 "that is plausible on its face," his complaint cannot survive a motion to dismiss.  Twombly, 550 U.S. at 570.

　　　Finally, Mr. Veal also alleges that the Defendants retaliated against him by terminating his unenforceable oral contract with BCYF in 2018, in violation of 42 U.S.C.

---

[10] This accords with the underlying purpose of § 1981, which is "to eradicate blatant deprivations of civil rights," such as where parties are denied the right to contract simply because of their race. Id. at 1016 (quoting General Building Contractors Assn., Inc. v. Pennsylvania, 458 U.S. 375, 388 (1982)).
[11] See Alston, 988 F.3d at 564 (affirming the dismissal of § 1981 claim against a member of the Board of Selectman for terminating the employment of plaintiff, a black firefighter, where the plaintiff's complaint never alleged that the member's conduct was motivated by plaintiff's race, and the complaint did not include any allegation of racial animus the part of the board member).

§ 1981. Compl. ¶¶ 158–166. Mr. Veal appears to advance a theory that the Defendants, at some point in 2016, informed him that the City would be instituting new contractual requirements between BCYF and site councils, and Mr. Veal refused to agree to these new requirements, stating that he wanted the existing oral agreement to remain in place. Id. ¶¶ 42, 46–47, 53, 61. The Defendants then terminated the contract by letter on February 23, 2016, purportedly due to Mr. Veal's misuse of charitable funds. Id. ¶ 84. Mr. Veal alleges that this termination of his contract was impermissible retaliation for his refusal to agree to the new contractual terms requested by the City. Id. ¶ 98. Section 1981 encompasses retaliation claims. CBOCS W., Inc. v. Humphries, 553 U.S. 442, 457 (2008). But rrotected conduct that will support a claim of retaliation needs to be protesting the racial discrimination on which a § 1981 claim is premised, not retaliation for unprotected conduct. See, e.g. Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 355 (2013).

E. **Count IV Must Be Dismissed Because Mr. Veal Has Not Sufficiently Alleged That He Had a Property Interest in His Continued Employment Nor Has He Sufficiently Alleged That He Had a Liberty Interest in His Reputation, As Required To State a Claim For a Due Process Violation Under 42 U.S.C. § 1983.**

1. **Mr. Veal Has Not Sufficiently Alleged That He Had a Property Interest in His Continued Employment As Required To State a Claim For a Due Process Violation Under 42 U.S.C. § 1983.**

Plaintiff's 42 U.S.C. § 1983 claim posits that the Defendants violated his Fourteenth Amendment right to procedural and substantive due process by terminating MCCI's purported oral contract to remain in the building until 2023. Compl. ¶¶ 20, 40, 41, 169. Plaintiff describes the municipal policy at issue as the City's decision to require BCYF site councils, such as the Plaintiff, to adopt new contracts with the City and BCYF

in writing in order to remain in City buildings, therefore nullifying any existing oral agreements, including the Plaintiff's. Id. ¶¶ 16–19.

Section 1983 allows a plaintiff to obtain damages when defendants, acting "under color of any statute, ordinance, regulation, custom, or usage" of a government unit, such as a municipality, deprive the plaintiff of a Constitutional right. 42 U.S.C. § 1983; Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 403 (1997).[12]  Furthermore, the plaintiff must show that the municipal action was "taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Brown, 520 U.S. at 404.

Here, Plaintiff alleges that Defendants deprived him of his property interest in continued employment by MCCI supported by its right to operate out of a BCYF building, in violation of his right to due process of law. Compl. ¶¶ 18, 20, 40, 169.

Plaintiff's case is similar to Bleeker v. Dukakis, in which the First Circuit found that the plaintiff, an at will employee with an oral agreement, did not have a property interest in his continued employment within the meaning of the Fourteenth Amendment to support a due process claim. 665 F.2d 401, 403 (1st Cir. 1981). Here is even one more step removed - Mr. Veal has not alleged anything about the terms of his employment by MCCI, and furthermore the City's purported interference with that right was by terminating MCCI's ability to operate out of a City building.  For the reasons stated in the discussion of Count I, Plaintiff has failed to even allege the existence of a binding contract between MCCI and the City. As such, the Plaintiff has not alleged facts which

---

[12] Therefore, to plead municipal liability under § 1983, a plaintiff must allege (1) an unconstitutional "policy or custom" of the City, and (2) that this policy or custom was "the moving force" behind the alleged injury. See Brown, 520 U.S. at 403–05. City policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51 (2011).

allege that the Defendants violated § 1983 by denying the Plaintiff his due process rights when they terminated MCCI's continued ability to occupy and operate out of a City building.

> ### 2.   Mr. Veal Has Not Sufficiently Alleged That He Had a Liberty Interest in His Reputation As Required To State a Claim For a Due Process Violation Under 42 U.S.C. § 1983.

Mr. Veal also asserts a 42 U.S.C. § 1983 claim, premised on the allegation that the Defendants committed defamation, which infringed upon his liberty right to his reputation, violating his constitutional right to due process under the Fourteenth Amendment.  Compl. ¶ 169.  Ultimately, even if he has alleged sufficient facts to establish that the Defendants committed defamation, he has not alleged sufficient facts to support a § 1983 claim.[13]  See Paul v. Davis, 424 U.S. 693, 702 (1976).  (Holding that Due Process Clause of the Fourteenth Amendment and § 1983 does not make actionable defamation inflicted by government employees; such action only gives rise to state-law tort claims).  Mr. Veal alleges that by accusing him of illegally using his non-profit's funds to grant his sister a mortgage, the Defendants damaged his reputation, in violation of his liberty interests protected by the Fourteenth Amendment.  Compl. ¶¶ 114, 115, 169. Given that the Supreme Court has explicitly rejected such a basis for a § 1983 claim, Mr. Veal has failed to state a claim and Count IV must be dismissed.  See Paul, 424 U.S. at 701, 702.

---

[13] The Plaintiff has not sufficiently alleged that the Defendants engaged in defamation by issuing a letter to the Plaintiff's non-profit (Mattapan Community Centers) that terminated the relationship between Plaintiff's nonprofit and the BCYF because of the Plaintiff's purported misuse of charitable funds. Ex. 2. There is no allegation that the City publicized the allegedly defamatory statements about the Plaintiff's purported illegal use of charitable funds beyond the Mattapan Community Centers. Buntin, 813 F.3d at 407; Plaintiff's Complaint, ¶¶ 114–115.

**3.   The Plaintiff Has Not Sufficiently Alleged That He Engaged In Protected Conduct As Required To State A Claim For Retaliation Under 42 U.S.C. § 1983.**

In Count IV, the Plaintiff alleges that he was retaliated against by the Defendants through the Defendants' termination of the oral contract. Compl. ¶ 176. The Plaintiff advances a theory that the Defendants, in 2016, informed Plaintiff that the City would be instituting new contractual requirements between BCYF and site councils, and the Plaintiff refused to agree to these new requirements, stating that he wanted to continue operating under the alleged oral agreement between MCCI and the City. Id. ¶¶ 42, 46–47, 53, 61. The Defendants then terminated the contract by letter on February 23, 2016, purportedly due to the Plaintiff's misuse of charitable funds. Id. ¶ 84.

To establish a presumption of retaliation under 42 U.S.C. § 1983, the Plaintiff must allege that the conduct he engaged in was constitutionally protected, and that "it was a substantial or motivating factor" of the City. Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr, 518 U.S. 668, 675 (1996).  If Mr. Veal's refusal on the part of MCCI to vacate City property or conform to City standards was a motivating factor in the City's dissociation with MCCI, such refusal is not protected speech. Mr. Veal was not a City employee and was not censored in what he said. He was the representative of an entity occupying City property, and refusal to leave, even if it was a motivating factor in the City's decisions, is not protected conduct for the purpose of  § 1983 retaliation.

**F.   Count V Violation of G. L. c. 93A, Must Be Dismissed Because the Plaintiff Has Not Alleged Facts Which Could Prove That the City of Boston Acted in an Unfair or Deceptive Manner in the Conduct of Trade or Commerce.**

In Count V, the Plaintiff seeks to avoid application of the well-established rules concerning the need to strictly comply with a city's statutory contracting procedures by

15

transforming the matter into a G.L. c. 93A claim. Mr. Veal claims that he is entitled to

relief under c. 93A, § 11, because he engaged in trade or commerce with the Defendants

and the Defendants engaged in "deceptive conduct when terminating the oral contract."

Compl. ¶¶ 127, 178.  To succeed on this claim, Mr. Veal will need to prove, among other

things, that the City engaged in an "unfair or deceptive act or practice," and that it did so

in the conduct of "trade or commerce."  G.L. c. 93A, § 11. Count V must be dismissed

because Mr. Veal has not sufficiently alleged either element.

### 1.  The City Was Not Engaged in Trade or Commerce.

Count V should also be dismissed because the Plaintiff has not alleged facts

which plausibly allege that the City was engaged in "trade or commerce," which is a

requisite for liability under G. L. c. 93A, § 11.

First of all, Plaintiff's G.L. c. 93A, § 11 claim rests on the allegation that he had a

valid employment contract with the City which was terminated. Compl. ¶¶ 30, 32. It is

settled law that a claim by an employee against an employer regarding an employment

contract does not fall within the scope of G.L. c. 93A, § 11 because an employment

relationship does not constitute trade or commerce. Bolen v. Paragon Plastics, Inc., 754 F.

Supp. 221, 227 (D. Mass. 1990); Manning v. Zuckerman, 388 Mass. 8, 14 (1983).[14]

Because Plaintiff's claim falls outside the scope of c. 93A, § 11, Plaintiff has failed to

state a claim on which relief can be granted and Count V must be dismissed.

Furthermore, Massachusetts courts have substantially limited the circumstances

under which a claim under c. 93A can be brought against a municipality. See Park Drive

---

[14] The rationale for the exclusion of employment disputes from the purview of c. 93A, § 11 is that these disputes are "principally 'private in nature' and do not occur in the ordinary 'conduct of any trade or business' as contemplated by the statute." Informix, Inc. v. Rennell, 41 Mass. App. Ct. 161, 163, (1996) (quoting Manning, 388 Mass. at 14).

16

Towing, Inc. v. Revere, 442 Mass. 80, 86 (2004); City of Beverly v. Bass River Golf Mgmt., Inc., 92 Mass. App. Ct. 595, 605 (2018); M. O'Connor Contracting, Inc. v. Brockton, 61 Mass. App. Ct. 278, 284 n.8 (2004). A plaintiff claiming that a municipality violated c. 93A must demonstrate that the municipality was "acting in a business context," meaning that it was engaged in "trade or commerce," as a threshold requirement for recovery. Bass River Golf Mgmt., 92 Mass. App. Ct. at 605 (quoting Park Drive Towing, 442 Mass. at 86). When the municipality's conduct constitutes governmental activity, the municipality is protected from liability under c. 93A because, "it is well-established that governmental entities are not amenable to suit under c. 93A when they have engaged in governmental activity rather than trade or commerce." M. O'Connor Contracting, 61 Mass. App. Ct. at 284.

No Massachusetts appellate court has found a city to have engaged in trade or commerce, under c. 93A, but the many cases that determine that a municipality was not so engaged make it entirely clear that the Plaintiff has not plausibly alleged that the City engaged in trade or commerce by engaging in decisions about when a non-profit entity can occupy a City community center building in order to operate community programming. To qualify as trade or commerce, conduct must take place in a "business context," which is determined by considering "the nature of the transaction, the character of the parties involved and [their] activities ... and whether the transaction [was] motivated by business ... reasons." Park Drive Towing, 442 Mass. at 86 (quoting Boston Hous. Authy. v. Howard, 427 Mass. 537, 538 (1998)); All Seasons Servs., Inc. v. Commissioner of Health and Hospitals of Boston, 416 Mass. 269, 271 (1993). The Supreme Judicial Court has adhered to a principle that a municipality is not engaged in

17

trade or commerce where the municipality does not seek to profit from a transaction and where the contract is part of or incidental to its ordinary municipal activities. Howard, 427 Mass. at 539, 540 (holding that the Boston Housing Authority was not engaged in trade or commerce when it rented an apartment to the defendant resident). Thus, the appellate courts repeatedly find that actions by municipalities have not occurred in a business context.[15]

There is only one context in which the SJC has found that a government entity was engaged in trade or commerce for c. 93A purposes. Wheatley v. Massachusetts Insurers Insolvency Fund, 456 Mass. 594, 610 (2010) ("Wheatley I"). The court held that the Massachusetts Insurers Insolvency Fund, a state-created association tasked with "settling unpaid claims covered by an insurance policy issued by an insurer that later becomes insolvent", was subject to c. 93A claims. Wheatley v. Massachusetts Insurers Insolvency Fund, 465 Mass. 297, 297, 298 (2013) ("Wheatley II"). That case can be readily distinguished from the instant case because the court rested its decision to find the fund amenable to c. 93A claims on the fact that the Massachusetts Legislature had added the fund to the definition of persons who could be sued under G.L. c. 176D, entitled "Unfair Methods of Competition and Unfair and Deceptive Acts and Practices in the Business of Insurance." G.L. c. 176D, § 1; Wheatley I, 456 Mass. at 600, 606. Here, there

---

[15] For example, when the Boston City Hospital granted a vending machine company the exclusive right to operate food vending machines in the hospital, the court held that the hospital was not engaged in trade or commerce because it was not seeking to make a profit and the contract was merely incidental to its primary function of providing medical services. All Seasons Servs., 416 Mass. at 271. Where a claim arose from a city's contracting for the construction of a municipal building, the claim arose from a "governmental function" and was not amenable to c. 93A. M. O'Connor Contracting, 61 Mass.App.Ct. at 284–85. Where a city allegedly terminated a contract to tow illegally parked cars, the SJC rejected a c. 93A claim because the transaction was "merely incidental to [the city's] primary function of maintaining order in the streets." Park Drive Towing, 442 Mass. at 86. Even running a lottery to generate revenue is not acting in the business context when the revenue goes to the state and the lottery is operated at legislative mandate rather than personal or business objectives. Bretton v. State Lottery Commn., 41 Mass. App. Ct. 736, 739–40 (1996).

is no such statute indicating that the court should depart from the long established idea that government entities are not engaged in trade or commerce when they are serving government purposes. The City, the BCYF, and the Defendant City employees were undoubtedly serving a government purpose and not intending to make a profit when they orally agreed to allow the Plaintiff to run a community center for the City's youth. This purpose is completely divergent from that of the Massachusetts Insurers Insolvency Fund in Wheatley I, which was to settle consumer claims at a low cost by stepping into the shoes of the insolvent insurance agencies and therefore acting "in the business of insurance." See id. at 606. Based on the clear pattern that emerges from the above cited cases, it is clear that the Plaintiff has not alleged facts that remove this case from the type of circumstances that Massachusetts courts have repeatedly found not to constitute trade or commerce.

The City acknowledges that the Federal District Court for the District of Massachusetts found a municipality amenable to suit under c. 93A in City of Revere v. Boston/Logan Airport Associates, LLC . 443 F.Supp.2d 121, 129 (D. Mass. 2006). The court determined that the City of Revere acted in a business context when it sought to enforce an easement on a piece of property that it had acquired through a tax taking because that action would allow it to secure more money for the sale of the property than it would otherwise obtain if it did not enforce the easement against the plaintiff. Id. Again, this case is distinguishable on the same grounds as the above state court decisions. The City of Revere was looking to increase its profits from the sale of the property. Here, the City of Boston was not motivated by profit. In short, dismissal of Count V is appropriate, given the governmental purpose at issue here.

**2.   No Unfair or Deceptive Conduct and No Valid Contract**

Even if the City was acting in trade or commerce, Mr. Veal has not alleged that the City engaged in "unfair or deceptive" conduct. Violation of a purported contract, alone, does not amount to a violation of c. 93A. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 100–101 (1979). Instead, "conduct 'in disregard of known contractual arrangements' and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes." Anthony's Pier Four, 411 Mass. at 474 (quoting Wang Labs., Inc. v. Business Incentives, Inc., 398 Mass. 854, 857 (1986)). Thus, a contract breach is only "unfair" for purposes of c. 93A when it is coercive or extortionate.  Diamond Crystal Brands, Inc. v. Backleaf, LLC, 60 Mass. App. Ct. 502, 507 (2004) (citing Massachusetts Employers Ins. Exch. v. Propac-Mass, Inc., 420 Mass. 39, 42–43 (1995) (a breach undertaken as leverage to destroy the rights of another party to the agreement while the agreement was still in effect was unfair)).  The Appeals Court has noted that those cases finding breach of contract to be "unfair" contain "a consistent pattern" of "use of a breach of contract as a lever to obtain advantage for the party committing the breach in relation to the other party." Atkinson v. Rosenthal, 33 Mass. App. Ct. 219, 226 (1992).  Even a deliberate and self-interested breach of contract was not an unfair act under c. 93A, where it lacked an extortionate quality. Id.

In the instant case, Mr. Veal's factual allegations do not assert that the City engaged in extortionate conduct that obtained for it some benefit at his expense. He has merely alleged that the City terminated an oral contract with the Plaintiff, which, for reasons described in the discussion of Count I, was not an enforceable contract in the first place. Compl. ¶ 178. Likewise, Mr. Veal failed to allege facts in his complaint that allege that the City benefited from the termination of this oral agreement. He offers nothing

more than a conclusory allegation that the Defendants terminated the oral agreement because, "Defendants wanted a better contract that gave BCYF and City greater benefits and control over Plaintiff's current contract." Id. ¶ 187. This is insufficient to allege that the Defendants used "a breach of contract as a lever to obtain advantage" for itself at the Plaintiff's expense. See Atkinson, 33 Mass. App. Ct. at 226.  Based on the Complaint, the Plaintiff failed to allege a breach of a valid contract, much less an unfair or deceptive practice on the part of the Defendants.

### G.  Count VI（Unjustly Enriched[16]) is Barred by Massachusetts Case Law and Also Fails to Allege Any Required Elements.

Mr. Veal alleges that the City  "gained a benefit of the termination of the oral agreement," without paying for the value that "he put forth for over 17 years of creating and help run the program" Compl. 190-91. He also contends that "The defendant was unjustly enriched" and he lost "a chance to collect a $90,000 salary from 2018 until 2023." Id. ¶ 194. Unjust enrichment is an equitable remedy, which "exist[s] to supplement those available at law and not to contradict the judgments embodied in the statutes and the common law." Stevens v. Thacker, 550 F. Supp. 2d 161, 165-66 (D. Mass. 2008). The availability of an adequate remedy at law, even if ultimately unviable, precludes a claim for unjust enrichment. Shaulis v. Nordstrom, Inc., 865 F.3d 1, 16 (1st Cir. 2017). Massachusetts courts do not allow parties to recast the failed contract claims which do not meet municipal contracting requirements as claims for quantum meruit, unjust enrichment, implied contract, etc. Park Drive Towing v. City of Revere, 442 Mass. 80, 84 n. 7 (2004). ("[A] party cannot evade the statutory limitations on a municipality's contracting power by rendering services and subsequently seeking recovery based on

---

[16] Mr. Veal wrote "Unjustly Enriched" in his Compliant. City Defendants believe it would be "Unjust Enrichment" so the rest of the brief would use "unjust enrichment."

alternative theories"). It is long-established that: "limitations on the contracting power of municipal officers cannot be evaded by first rendering services or furnishing supplies without an express contract and then claiming under an implied contract for work performed or for goods delivered. In such cases there is no implied contract." E.g., Adalian Bros., Inc. v. City of Boston, 323 Mass.629, 632 (1949); Central Tow Co. Inc. v. City of Boston, 371 Mass. 341, 345 (1976). Mr. Veal's claim for unjust enrichment contradicts the statutory requirement and must be barred, as an effort to avoid statutory contracting requirements by inviting the court to impose liability in quasi-contract for the same alleged breach.  See, e.g. Massachusetts Respiratory Hosp. v. Department of Public Welfare, 414 Mass. 330, 338 (1993); Bolen v. Paragon Plastics, Inc., 747 F. Supp. 103, 107 (D.Mass.1990) ("the term quasi-contract, or implied contract, is a form of action used to recover money damages for any type of unjust enrichment").

## H.  **Count VII Discrimination Conspiracy and Count VIII Retaliatory Conspiracy in Violation of 42 U.S.C § 1985 Should Be Dismissed For Failure To State a Cause of Action.**

Counts VII and VIII  for violations of 42 U.S.C. § 1985 should be dismissed because Mr. Veal's complaint, even constructed liberally due to his pro se status, failed to state the cause of actions under § 1985.[17] Subsection (3) of the statute prohibits "two or more persons in any State or Territory [from] conspire[ing to] ... depriv[e] ... any person or class of persons of the equal protection of the laws." Perez-Sanchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008) (quoting 42 U.S.C. § 1985(3)).  The plaintiff's

---

[17] Section 1985 has three subsections, each of which sets forth a distinct cause of action." Donahue v. City of Boston, 304 F.3d 110, 122 n.9 (1st Cir. 2002).  Although Mr. Veal does not specify under which subsection of § 1985 he seeks to proceed, it is plainly not under Section (1) having to do with federal officers or Section (2) about intimidating witnesses in a proceeding in federal court.

prima facie case must satisfy the four-part requirement of the statute by alleging and proving: (1) a conspiracy; (2) for the purpose to deprive the plaintiff of the equal protection of the laws; (3) an overt act in furtherance of the conspiracy; and (4) either injury to person or property, or a deprivation of any right or privilege of a citizen of the United States.  United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983); Parker v. Landry, 935 F.3d 9, 18 (1st Cir. 2019).

### a. Mr. Veal pleads neither a conspiracy nor that racial animus lay behind the purported conspirators' actions

Pleading a section 1985(3) conspiracy "requires at least minimum factual support of the existence of a conspiracy."  Francis-Sobel v. Univ. of Me., 597 F.2d 15, 17 (1st Cir. 1979).  To survive on a motion to dismiss, there must be facts indicating an agreement among the conspirators to deprive of Plaintiff's civil rights.  Parker v. Landry, 935 F.3d 9, 18 (1st Cir. 2019).  Without direct evidence of such an agreement, the plaintiff must plead plausible factual allegations sufficient to support a reasonable inference that such an agreement was made.  Id.  Further, it is well-established that "to ground a section 1985(3) conspiracy: the agreement must involve 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" Id.  (citation omitted).

Here, Mr. Veal does not present any conspiracy, or overt act in furtherance of the conspiracy, or any racial or class-based animus behind the alleged conspirators' action.  Mr. Veal just conclusively alleges "[City defendants] conspired to implement an unwritten or written policy to terminate Plaintiffs, Mattapan's and others oral contracts, Michael, Morales, and Lorna were policy makers, this caused plaintiff injury contrary to 42 U.S.C. §198,1,1983. 1985(2)(3), MGL 93a and other statutes in this complaint.  Pl.

Case 1:21-cv-10265-ADB   Document 13   Filed 03/25/21   Page 24 of 25

Compl. ¶ 41. Except the allegation that "[he] is a member of a racial minority of a protected class," Mr. Veal does not allege any facts that would permit the court plausibly to infer an agreement among the Defendants, motivated by some discriminatory animus, to deprive him of his right.  See Parker v. Landry, 935 F.3d 9, 18 (1st Cir. 2019).

**b. Mr. Veal does not plead a separate injury to person or property, or a deprivation of any right or privilege arising from the invalid contract.**

1985 (3) is not a general federal tort claim. Mr. Veal must plead his protected right was injured due to the interference by the alleged discriminatory conspiracy. Here, Mr. Veal just conclusively alleges the discriminatory and retaliatory conspiracy by defendants arose from his alleged contract claims. Compl. ¶ 42-43. As discussed above, Mr. Veal has not alleged an enforceable contract and thus there are neither  protected contractual rights nor any other protected rights were interfered by the alleged conspiracy and cause of his injury. See Zemke v. Chicago, 100 F.3d 511, 513 (7th Cir. 1996).

Therefore, Mr. Veal's 1985 claims must be dismissed because his conclusory allegation does not show that there is conspiracy among defendants, some class-based usually racial animus lay behind the conspirators' action, nor that the conspiracy was aimed at interfering with protected rights. See Donahue v. Boston, 304 F.3d 110, 122 (1st Cir. 2002)  Cf. Estate of Bennett, 548 F.3d at 178.  Parker v. Landry, 935 F.3d 9, 18 (1st Cir. 2019) (A complaint containing only vague and conclusory allegations of a conspiracy fails to state a plausible claim under section 1985(3)).

## IV.    CONCLUSION

For the reasons set forth above, Mr. Veal has failed to state a claim upon which relief can be granted. Therefore, City Defendants respectfully request this Honorable Court grant its Motion to Dismiss Counts I, II, III, IV, V, VI, VII, VIII with prejudice.

Respectfully submitted,

DEFENDANTS,
CITY OF BOSTON,
COMMISSIONER OF BOSTON CENTERS
FOR YOUTH & FAMILIES,
MARTIN JOSEPH WALSH,
WILLIAM MORALES,
MICHAEL SULPRIZIO,
LORNA BOGNANNO

By their attorneys:

Corporation Counsel
Henry C. Luthin

_____
Adam Cederbaum, BBO# 661549
Chief of Government Services
Mary M. Jennings, BBO # 703037
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
(617) 635-4030 (Cederbaum)
(617) 635-4049 (Jennings)
Adam.Cederbaum@boston.gov
Mary.Jennings@boston.gov

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and electronic copies will be sent through emails to those indicated as non-registered participants on March 25, 2021.

3/25/2021                                                   /s/ Adam Cederbaum

_____          _____
Date                                                         Adam Cederbaum

25