### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS
### BOSTON DIVISION

| | |
|---|---|
| WILLIAM VEAL, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF BOSTON CENTERS FOR YOUTH & FAMILIES, CITY OF BOSTON, MARTIN JOSEPH WALSH, WILLIAM MORALES, MICHAEL SULPRIZIO, LORNA BOGNANNO, THOMAS BOWE C.P.A. PC, THOMAS BOWE,  BONNIE WALLACE, JOHN DOE and JANE DOE. <br><br> Defendants. | CIVIL ACTION NO.: 1:21-CV-10265-MBB <br><br> **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

**NOW COMES**, Defendant, Bonnie Mines Wallace by and through her attorneys, Aprodu Conley, PLLC and submits this Memorandum of Law in support of her Motion to Dismiss, with prejudice and its entirety, Plaintiff's Verified Second Amended Complaint and remove her as a Defendant from this action pursuant to the Federal Rules of Civil Procedure 12 (b) (6). In support thereof she states as follows:

### I.        STATEMENT OF ALLEGED FACTS

Defendant, Bonnie Mines Wallace ("Ms. Wallace") was at all times relevant and material hereto employed by Mattapan Community Center, Inc. ("MCCI") as a part-time bookkeeper.[1] *See* Exhibit A, ¶ 2. As part of her duties, she reviewed financial documents, checked for any discrepancies and prepared and filed appropriate reports. *See* Exhibit A, ¶ 4. In or about February 2017, Ms. Wallace discovered that MCCI's savings account was missing about $100,000. *See*

---

[1] She was and still is a full-time employee of the City of Boston, working as the Payroll Director.

Exhibit A, ¶ 7. Per her duties, she reached out to MCCI's board, including Mr. Veal asking for clarification on what happened to the missing money.[2] *See* Exhibit A, ¶ 8. She received no response from Mr. Veal or the other member of MCCI's board. *See* Exhibit A, ¶ 9.

Accordingly, consistent with her job duties, she prepared the report with the unexplained discrepancy and presented it to MCCI's accountant. *See* Exhibit A, ¶ 9. After the discrepancy was classified as an unauthorized use of charitable funds, Ms. Wallace was approached by several individuals, including Defendant Lorna to explain the same. *See* Exhibit A, ¶ 11. She explained she did not know how or when the discrepancy occurred, that she asked the MCCI board for clarification, and receiving none, sent her report to MCCI's CPA as it was time sensitive. *See* Exhibit A, ¶ 11. Ms. Wallace had no further involvement in this matter, including any involvement in the City of Boston's or any other defendant's decision to disassociate with MCCI. *See* Exhibit A, ¶ 12.

## II.    LEGAL STANDARD

In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The "obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal quotation marks and alteration omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to cross the "line from conceivable to plausible." Id. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

---

[2] Ms. Wallace was not aware of the Board's vote to give Mr. Veal's sister a first mortgage.

the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 556).

However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" <u>Id</u>. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555). Simply put, the court should assume that well pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. Id. at 679. In assessing a 12(b)(6) motion, the court may review documents outside the pleadings that are undisputed, central to a plaintiff's claims, and sufficiently referred to in the complaint or incorporated into the pleadings without converting the motion into one for summary judgment. <u>In re Citigroup</u>, 535 F.3d 45, 52 (1st Cir. 2008).

### III.    <u>LEGAL ARGUMENT</u>

**A.  <u>ALL COUNTS OF THE VERIFIED SECOND AMENDED COMPLAINT SHOULD BE DISMISSED AS PLAINTIFF LACKS STANDING. HE WAS NOT INDIVIDUALLY A PARTY TO THE ALLEGED CONTRACT AND HE CANNOT MAINTAIN A DERIVATIVE ACTION FOR ANY DAMAGES SUFFERED AS A RESULT OF ANY ALLEGED BREACH OF CONTRACT.</u>**

While Plaintiff makes seemingly unrelated allegations in his Verified Second Amended Complaint, it is clear that all allegations stem from two events: i) an alleged oral contract between MCCI and Mayor Menino; and ii) the disassociation of the City of Boston from MCCI following reports and investigations that charitable funds were authorized and used in a manner inconsistent with a charitable organization. The survival of the Verified Second Amended Complaint depends on both events, and both must be present for Mr. Veal to plead his case.

Taking the facts in a light most favorable to Mr. Veal, thereby assuming that there was an oral contract between MCCI and Mayor Menino, Mr. Veal still needs to show that the disassociation was as a result of a conspiracy, or some sort of discriminatory acts against him. And clearly, that is what Mr. Veal attempts to show in his Verified Second Amended Complaint.

However, because the initial contract would have been between Mr. Veal's company, MCCI, and the City of Boston and/or Mayor Menino, the only party with the ability to bring any claims resulting from the contract, or breach thereof is MCCI.

It is well established that when a harm has been directed toward a corporation then generally only the corporation has standing to assert a claim. *See generally* Brictson v. Woodrough, 164 F.2d 107,109 (8th Cir. 1947). Moreover, when the direct injury is to the corporation, and the individual bringing suit suffers derivative damages there is no standing. *See* Elbery v. Becket Woods Rd. & Maint. Dist., No. 09-CV-30076-MAP, 2010 WL 3038322, at *4 (D. Mass. July 29, 2010) ("The law in this circuit is clear that where a harm has been directed toward a corporation, only the corporation has standing to seek a remedy for that harm.").

Even taking Mr. Veal's claims in light most favorable to him, and even assuming *arguendo*, that there may have been a breach of contract, the injury suffered would have been suffered by MCCI. That Mr. Veal, as a volunteer or employee of MCCI, may have lost a potential salary, is a derivative claim that he has no standing to bring.

For the reasons above and those that follow, it is respectfully requested that this Honorable Court dismiss Plaintiff's Verified Second Amended Complaint against Ms. Wallace in its entirety.

**B. <u>COUNT 1 ALLEGING BREACH OF CONTRACT SHOULD BE DISMISSED IN ITS ENTIRETY AS MS. WALLACE WAS NOT A PARTY TO THE CONTRACT BETWEEN MR. VEAL AND MAYOR MENINO.</u>**

A fundamental part of any contract is a meeting of the minds leading to an agreement between parties. *See* e.g., Vacca v. Brigham & Women's Hosp., Inc., 98 Mass. App. Ct. 463, 467 (2020), review denied, 486 Mass. 1108 (2020) (holding that for breach of contract, a plaintiff must demonstrate that there was an agreement between the parties). To prevail on a claim for breach of

contract, the plaintiff must demonstrate: that there was an agreement between the parties, the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result. <u>Bulwer v. Mount Auburn Hosp.</u>, 46 N.E.3d 24, 39 (2016); *see also* <u>Singarella v. Boston</u>, 173 N.E.2d 290, 291 (1961). If there is no agreement, there is no contract, which is Ms. Wallace's situation.

In order for Mr. Veal to sustain a breach of contract claim against Ms. Wallace, he would have to first show that he and Ms. Wallace agreed that he/MCCI would be able to maintain a zero-dollar lease until 2023. Not only is there no allegation of the same, but Mr. Veal himself confirms that there was no contract between him and Ms. Wallace. For example, even in the Introduction of the Verified Second Amended Complaint Plaintiff states:

> "Here, the plaintiff's allegations arise from an Oral contractual and **lease made by Defendant Lorna Bognanno on behalf of the defendants City of Boston ("City"), BCYF in 2003 on behalf of Mayor Menino Administration, Commissioner of Boston Centers for Youth & Families ("BCYF").**"

Plaintiff's Verified Second Amended Complaint Introduction. (emphasis added).

In Paragraph 28 of Plaintiff's Verified Second Amended Complaint, Plaintiff states that "the contract was made **between plaintiff City and BCYF** for $0 lease only to make programs that would benefit the community and create employment." (emphasis added); *see also* Verified Second Amended Complaint ¶ 104. Moreover, as evidence by the disassociation letter, addressed to MCCI, any contract that may have existed was not between Mr. Veal individually and the City of Boston, but between MCCI and the City of Boston. Therefore, Mr. Veal does not have standing to bring these claims. *See supra.*

Mr. Veal clearly states that the alleged contract at issue was between him/MCCI[3] and Mayor Menino, and was entered into back in 2003. Plaintiff's Verified Second Amended Complaint ¶ 68. Ms. Wallace was not a party to the contract between Plaintiff and Mayor Menino and there are no allegations of the same. *See* Exhibit A, ¶ 5,6. Moreover, Ms. Wallace never held a position with the City of Boston or any other governmental entity that would allow her to bind the City of Boston into a contract granting Mr. Veal a zero-dollar lease. *See* Exhibit A, ¶ 14.

Even assuming *arguendo*, that Ms. Wallace was somehow part of this alleged oral contract, it would not be enforceable. While Massachusetts enforces certain oral contracts, the Statute of Frauds dictates that any contract expected to last more than one (1) year be in writing. G. L. c. 259, § 1. Plaintiff admits that the alleged contract was supposed to last from 2003 to 2023 or twenty (20) years. *See* Plaintiff's Verified Second Amended Complaint ¶ 54, ¶ 69. This type of contract would have to have been in writing to be enforceable.[4]

For the reasons above and those that follow, it is respectfully requested that this Honorable Court dismiss Plaintiff's Verified Second Amended Complaint against Ms. Wallace in its entirety.

## C. COUNT 2 ALLEGING BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING SHOULD BE DISMISSED IN ITS ENTIRETY AS MS. WALLACE WAS NOT A PARTY TO THE ALLEGED CONTRACT.

It is well established in Massachusetts that the covenant of good faith and fair dealing is implied in every contract. *See* Ayash v. Dana-Farber Cancer Institute, 443 Mass. 367, 385 (2005). Such a claim can only be brought if a contract existed in the first place, because the implied covenant does not create rights not otherwise provided for in an existing contractual relationship.

---

[3] Plaintiff in some instance of his Verified Second Amended Complaint refers to himself as "Plaintiff/MCCI".
[4] Plaintiff, individually, would also not have standing to bring this breach of contract claim. *See Supra*.

As stated above and incorporated herein, there was no contract between Ms. Wallace and Mr. Veal/MCCI relating to a lease or otherwise, and therefore a claim for the breach of the covenant of good faith and fair dealing cannot be maintained.

For the reasons above and those that follow, it is respectfully requested that this Honorable Court dismiss Plaintiff's Verified Second Amended Complaint against Ms. Wallace in its entirety.

D. **<u>COUNT 3 ALLEGING VIOLATIONS OF 42 USC 1981 MUST BE DISMISSED WHETHER THE ACTIONS CLAIMED ARE UNDER THE COLOR OR LAW, OR OTHERWISE, BECAUSE THE VERIFIED SECOND AMENDED COMPLAINT FAILS TO STATE ANY CLAIM UPON RELIEF CAN BE GRANTED.</u>**

Claims under 42 U.S.C. 1981 may be brought against governmental employees and non-governmental employees. *See* 42 U.S.C. 1981(c). In the case at bar, Ms. Wallace is and was at the time of the alleged actions, a governmental employee by virtue of her position as the Payroll Director for City of Boston **However, at the time of the allegations in this matter, she was not working in her capacity as a City of Boston employee, but in her capacity as a part time employee of MCCI.** *See* <u>Exhibit A</u>, ¶ 13. **The actions she took in regard to the case at bar were all in her capacity as a Bookkeeper for MCCI.** *See* <u>Exhibit A</u>, ¶ 7-9.

To the extent that this Honorable Court may find that Ms. Wallace was acting in her capacity as a City of Boston employee, Ms. Wallace relies on the First Circuit's decision in <u>Buntin v. City of Boston</u> 857 F.3d 69, 70 (1st Cir. 2017), which followed the Supreme Court's precedent in <u>Jett v. Dallas Independent School District</u>, 491 U.S. 701 (1989). The First Circuit held that there is no private right of action against government employees because "[42 U.S.C.] § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.'" <u>Id</u>. at 70–71 (quoting <u>Jett</u> 491 U.S. at 733 (1989). Like in <u>Buntin</u>, any claim under 42 U.S.C. 1981 alleging actions by Ms. Wallace under the color of law must be dismissed.

Even if Mr. Veal asserts that Ms. Wallace's actions as a non-governmental actor are the basis of his claims, the Verified Second Amended Complaint fails to state any claims upon which relief can be granted. For Mr. Veal to state claim for relief under 42 U.S.C. 1981, he must allege some facts that would permit the court to find that he was unable to make or enforce a contract that white citizens were able to make or enforce. *See* Kodish v. United Airlines, Inc., 463 F. Supp. 1245, 1250 (1979). There are no such allegations in this case, especially as to Ms. Wallace. Throughout the alleged events, Ms. Wallace was doing her job as MCCI's bookkeeper and reported a discrepancy as required by her job, and by extension, as required by Mr. Veal, the President of MCCI. The actions taken by Ms. Wallace did not interfere with Mr. Veal's rights or ability to form or to enter into a contract with anyone.

Furthermore, Mr. Veal himself admits that he was not in fact prevented from entering into any contract, or renegotiating the alleged oral contract. Specifically, he states:

> "Plaintiff was targeted by all defendants (For Retaliation, Discrimination & Hostile Work Environment) **because of my refusal to renegotiate the $0 dollar lease** and allow Mattapan programs and money raised to be controlled by Defendants City, BCYF, and requesting a written contract that reflected the 2003 oral contract between Plaintiff, Defendants City, and BCYF made in 2003 by Plaintiff & Lorna, protesting & exercising my constitutional rights."

Verified Second Amended Complaint ¶104 (emphasis added). It is clear that there was no interference with Mr. Veal's rights to contract, but there was a refusal on Mr. Veal's part to renegotiate the contract.

Lastly, there is no evidence that Mr. Veal personally entered into any contract with anyone, let alone Ms. Wallace (who was Mr. Veal's employee), as it relates to this matter. *See* Faush v. Tuesday Morning, Inc., 995 F. Supp. 2d 350 (2014). (African American worker who was employee of staffing company could not maintain § 1981 claim against retailer for workplace discrimination

based on race, absent evidence that retailer ever entered into any contracts with worker.); *see also* Hawkins v. Pepsico, Inc., 10 F.Supp.2d 548 (1998) (In addition to proving intentional discrimination, an employee alleging employment discrimination under § 1981 must prove that the discrimination arose out of a contractual relationship).

For the reasons above and those that follow, it is respectfully requested that this Honorable Court dismiss Plaintiff's Verified Second Amended Complaint against Ms. Wallace in its entirety.

E. **COUNTS 4, ALLEGING VIOLATIONS OF 42 USC 1983 MUST BE DISMISSED AS TIME BARRED, AND BECAUSE THE VERIFIED SECOND AMENDED COMPLAINT FAILS TO STATE ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

The statute of limitations for claims pursuant to 42 U.S.C. 1983 is governed by the statute of limitations for tort cases in the state in which the incident allegedly occurred. *See* Wilson v. Garcia, 471 U.S. 261, 276 (1985); *see also* Perez v. O'Brien, No. 14-CV-10054-ADB, 2017 WL 690997, at *2 (D. Mass. Feb. 21, 2017) ("In actions brought under 42 U.S.C. § 1983, "courts use the personal-injury limitations period adopted by the state where the injury supposedly occurred" as the statute of limitations.)(citing Martinez-Rivera v. Puerto Rico, 812 F.3d 69, 74 (1st Cir. 2016). In Massachusetts, the statute of limitations for a personal injury action (including discrimination) is three (3) years. *See* M.G.L. c. 260, § 2A; *see also* M.G.L. c. 151B, § 9 (statute of limitations in Massachusetts for discrimination); *see also* Spencer v. City of Chelsea, No. CIV. A. 08-12000-RGS, 2009 WL 961227, at *1 (D. Mass. Apr. 8, 2009) ("The period of limitations for a § 1983 action is governed by the forum state's statute of limitations for personal injury actions. See Wilson v. Garcia, 471 U.S. 261, 276–280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), superseded by statute on other grounds, as stated in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 377–378, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004)").

In neither the original complaint nor the Verified Second Amended Complaint is Mr. Veal specific about when these alleged discriminatory acts occurred. However, specifically looking at Mr. Veal's chronology shows that all actions took place sometime in February 2017, or earlier. The disassociation letter is dated February 23, 2017. *See* Exhibit 2 of Plaintiff's Verified Second Amended Complaint. Mr. Veal's Verified Second Amended Complaint alleges that there were conspiracies between the defendants which led to the termination/ disassociation in February 2017. Therefore, the events which form the basis for Mr. Veal's complaint occurred before February 2017, and no later than February 23, 2017. As such, and in order for the 42 USC 1983 claims to be timely they had to have been filed no later than February 23, 2020. Plaintiff filed this case on February 16, 2021, almost one year after the expiration of the statute of limitations. The Supreme Judicial Court's ("SJC") tolling as a result of COVID 19 would not save Plaintiff's claims, because it applied only to claims which expired between March 17, 2020 and July 31, 2020. *See* Exhibit B. Plaintiff's causes of action under 42 U.S.C. 1983 expired before the SJC's tolling provisions went into effect.

Even if Plaintiff's Complaint were filed within the applicable statute of limitations, they must still be dismissed as the Verified Second Amended Complaint fails to state a cause of action upon which relief can be granted. To sustain a 42 USC 1983 claim a plaintiff must show: that the action occurred "under color of state law" and the action resulted in the deprivation of a constitutional right or federal statutory right. *See* Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Plaintiff's Verified Second Amended Complaint fails to show that Ms. Wallace acted under the color of law. At all times relevant and material to Plaintiff's claims, **Ms. Wallace was acting in her role as an employee of MCCI**, specifically as its bookkeeper. MCCI is a nonprofit

corporation and not a governmental entity. *See* Exhibit C. There is no claim or evidence that Ms. Wallace was acting on behalf of any governmental entity at the time of the events described in Plaintiff's Verified Second Amended Complaint. *See* Exhibit A, ¶ 14.

For the reasons above and those that follow, it is respectfully requested that this Honorable Court dismiss Plaintiff's Verified Second Amended Complaint against Ms. Wallace in its entirety.

**F. COUNT 5 ALLEGING VIOLATIONS OF 93A MUST BE DISMISSED AS MS. WALLACE WAS NOT ENGAGED IN "TRADE OR COMMERCE" AS REQUIRED BY THE STATUTE.**

For a court to find trade or commerce under 93A, the conduct must take place in a "business context," which is determined by considering "the nature of the transaction, the character of the parties involved and [their] activities ... and whether the transaction [was] motivated by business . . . reasons." Boston Hous. Authy. v. Howard, 427 Mass. 537, 538 (1998); All Seasons Servs., Inc. v. Commissioner of Health and Hospitals of Boston, 416 Mass. 269, 271 (1993). Here, Mr. Veal alleges that Ms. Wallace's submission of her report to MCCI's account constitutes "trade or commerce" under 93A. That belief is misplaced, as Ms. Wallace submitted said report as part of her job duties with MCCI, and as required by her employer. More significantly, Ms. Wallace's actions were not motivated by business reasons, but by the duties of her position with Mr. Veal's company, MCCI. No activity that Ms. Wallace allegedly engaged in would constitute "trade or commerce" and invoke 93A.

Any argument that a potential breach of contract constitutes a violation of 93A is likewise misplaced. It is well established in Massachusetts that violations of a purported contract, alone, does not amount to a violation of c. 93A. *See* Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 100–101 (1979).

For the reasons above and those that follow, it is respectfully requested that this Honorable Court dismiss Plaintiff's Verified Second Amended Complaint against Ms. Wallace in its entirety.

G. **COUNT 7 ALLEGING DISCRIMINATION, AND RETALIATION IN VIOLATION OF 42 USC 1985 AND COUNT 8 ALLEGING CONSPIRACY MUST BE DISMISSED AS TIME BARRED, AND BECAUSE THE VERIFIED SECOND AMENDED COMPLAINT FAILS TO STATE ANY CLAIM UPON RELIEF CAN BE GRANTED.**

The applicable limitations period for 42 U.S.C. 1985 claims is determined by reference to analogous state law provisions. *See* Casanova v. Dubois, 304 F.3d 75, 78 (1st Cir. 2002). In Massachusetts, the statute of limitations for tort personal injury actions is three (3) years. G.L.c.260 §2A.

Mr. Veal in neither the original complaint nor the Verified Second Amended Complaint is specific about when these alleged discriminatory acts or conspiracy occurred. However, reading the Verified Second Amended Complaint and specifically looking at Mr. Veal's chronology shows that all actions took place sometime in February 2017, or earlier (especially any claim of a conspiracy). The disassociation letter is dated February 23, 2017. *See* Exhibit 2 of Plaintiff's Verified Second Amended Complaint.

Mr. Veal's Verified Second Amended Complaint alleges that there were conspiracies between the defendants which led to the termination/ disassociation in February 2017. Therefore, the events which form the basis for Mr. Veal's complaint occurred before February 23, 2017, or on February 23, 2017. In order for the 42 USC 1985 claims to be timely they had to have been filed no later than February 23, 2020. Plaintiff filed this case on February 16, 2021, almost more than one (1) year after the expiration of the statute of limitations. The SJC tolling as a result of COVID 19 would not save Plaintiff's claims, because it applied only to claims which expired

between March 17, 2020 and July 31, 2020. *See* <u>Exhibit B.</u> Plaintiff's causes of action under 42 U.S.C. 1985 expired before the SJC's tolling provisions came into effect.

Even if Plaintiff's Complaint were filed within the applicable statute of limitations, they must still be dismissed as the Verified Second Amended Complaint fails to state a cause of action upon which relief can be granted. To sustain a claim under §1985(3), it must be shown that "some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action, and (2) the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *See* <u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263 (1993).

More specifically, the protected right must be the objective of any alleged conspiracy enterprise and the alleged conspirators must act with the intent to deprive the plaintiff of one of the protected right, rather than simply having an effect upon the right. <u>Id</u>. Moreover, in order to succeed on a 42 U.S.C.A. § 1985(3) claim, a conspiracy must be proven. <u>Id</u>.

In the case at bar, the only "evidence" of a conspiracy proffered by Plaintiff are uncorroborated legal conclusions. There is nothing in the complaint alleging when, how or why any conspiracy against him would have been entered into by Ms. Wallace and any of the other defendants. There is no evidence that that the defendants discussed or in any way made the decision to disassociate from MCCI together. There is however evidence (and an admission) that Mr. Veal agreed to provide charitable funds directly to his sister. There is evidence that Ms. Wallace became aware of a discrepancy in MCCI's account and that she reported said discrepancy as she was required by her job. *See* <u>Exhibit A</u>, ¶ 7-9.

Lastly, even if Plaintiff pleads an indicia of a conspiracy, it is insufficient and Plaintiff still cannot show a cause of action upon which relief can be granted.  Mr. Veal himself admits that he was not in fact prevented from entering into any contract, or renegotiating the alleged oral contract. Specifically, he states:

> "Plaintiff was targeted by all defendants (For Retaliation, Discrimination & Hostile Work Environment) **because of my refusal to renegotiate the $0 dollar lease** and allow Mattapan programs and money raised to be controlled by Defendants City, BCYF, and requesting a written contract that reflected the 2003 oral contract between Plaintiff, Defendants City, and BCYF made in 2003 by Plaintiff & Lorna, protesting & exercising my constitutional rights."

Verified Second Amended Complaint ¶104 (emphasis added). It is clear that there was no conspiracy to deprive Mr. Veal of his right to contract, but there was a refusal on Mr. Veal's part to exercise his right to contract.

For the reasons above and those that follow, it is respectfully requested that this Honorable Court dismiss Plaintiff's Verified Second Amended Complaint against Ms. Wallace in its entirety.

## IV.     <u>CONCLUSION</u>

Despite the voluminous Verified Second Complaint, it is clear that Counts 4, 7, and 8 must be dismissed as time barred and that the remaining counts related to Ms. Wallace must be dismissed, because Plaintiff fails to state a cause of action upon which relief can be granted.[5] Accordingly, it is respectfully requested that this Honorable Court dismiss, with prejudice and in its entirety, Plaintiff's Verified Second Amended Complaint as it relates to Ms. Wallace.

---

[5] Count 6 alleging unjust enrichment  and Count 9 (misnumbered as a duplicate Count 8) requesting injunctive relief, do not name Ms. Wallace, and as such do not require a response.

14

Respectfully submitted:


/s/ *Adela Aprodu*
_____
Adela Aprodu
BBO#: 690710
Aprodu Conley, PLLC
153 Andover Street
Suite 205
Danvers, MA 01923
T. (978) 406-9090
F. (978) 908-2132
adela@apco.law



DATED: May 7, 2021

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the ECF and paper copies will be sent to those indicated as non-registered participants on May 7, 2020. As a courtesy and out of an abundance of caution, a copy of the foregoing was also served via e-mail on *pro se* Plaintiff, William Veal, as follows:

**William Veal, Plaintiff**
Mrveal@yahoo.com

/s/ **Adela Aprodu**
Adela Aprodu, Esq.
BBO#690710
Aprodu Conley, PLLC
153 Andover Street
Suite 205
Danvers, MA 01932
T. (978) 406-9890
F. (978) 908-2132
adela@apco.law