UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


William Veal                                                Case 1:21-cv-10265

   Plaintiff

Commissioner of Boston Centers for Youth & Families et al

   Defendants


VERIFIED OPPOSITION TO DEFENDANTS

MOTION TO DISMIS

1. Most of the case law that the City Defendants quote and relied on is irrelevant because it was on a summary judgment not a 12(b)(6) motion to dismiss the parties had a chance for full discovery to flush out all matters of the case, here plaintiff is at the motion to dismiss stage, this case law is quoted in contradiction to the current case.

2. Defendants fails to realize that a court's goal in reviewing a Rule 12(b)(6) motion is to determine whether the factual allegations in the plaintiff's complaint set forth "a plausible claim upon which relief may be granted. "*Woods v. Wells Fargo Bank, N.A.,*733 F.3d 349, 353 (1st Cir.2013). The court must take all of the pleaded factual allegations in the complaint as true. *Watterson,*987 F.2d at 3. Barring "narrow exceptions," courts tasked with this feat usually consider only the complaint, documents attached to it, and documents expressly incorporated into it. *Id.* Thus, a primary purpose of a Rule 12(b)(6) motion is to weed out cases that do not warrant reaching the (oftentimes) laborious and expensive discovery process because, based on the factual scenario on which the case rests, the plaintiff could never win. In short, plaintiffs are not required to submit evidence to defeat a Rule 12(b)(6) motion but need only sufficiently allege in their complaint a plausible claim. *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 71-72 (1st Cir. 2014)

3. Dismissal is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Cooperman v. Individual, Inc.,* 171 F.3d 43, 46 (1st Cir. 1999). *Moss v. Camp Pemigewassett, Inc.*, 312 F.3d 503, 507 (1st Cir. 2002) "The plaintiff "need only surmount a minimal hurdle to survive a motion to dismiss for failure to state a claim." Bell v. Mazza , 394 Mass. 176, 184 (1985)." *Bell v. Oneighty C Techs. Corp.*, 81 N.E.3d 825 (Mass. App. Ct. 2017)

BURDEN OF PROOF STANDARD OF REVIEW

4. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss a complaint is appropriate where the Plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss , the complaint must make sufficient factual allegations "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Facial plausibility requires the facts in the complaint to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and that relief is "more than a sheer possibility." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In cases where the plaintiff is a pro se litigant, the complaint must "be liberally construed [and] however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted). At the motion to dismiss stage , all well-pled facts in the complaint are entitled to an assumption of veracity and all reasonable inferences must be drawn in the Plaintiff's favor. Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007)."To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44-45 (1st Cir. 2012) (citing Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible . . . ." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)). "The plausibility standard invites a two-step pavane." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Secondly, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

## INTRODUCTION

5. Plaintiff opposes the City Defendants City of Boston (the "City"); Boston Centers For Youth & Families ("BCYF"), a City department; Martin Joseph Walsh, the Mayor of the City of Boston from 2014 to 2021; William Morales ("Morales"), the Commissioner of the BCYF; Michael Sulprizio ("Sulprizio"), the former Deputy Commissioner of the BCYF; and Lorna Bognanno ("Bognanno"), the Regional Operations Manager of the City of Boston ( collectively, the "City Defendants") submit this memorandum of law in support of my opposition to dismiss.

6. Plaintiff files this opposition to Defendants Second Duplicate Motion to dismiss ("MTD") plaintiff amended his complaint on or about April 2021 to cure these same deficient that the City defendants are stating in their current 12(b)(6) Amended MTD.

7. Defendants' states in their First & Second MTD *"The contract claims must fail because Mr. Veal does not allege any contract between himself and the City,* Plaintiff clearly stated in his SACompl ¶ page 1 "their conduct deprived the plaintiff who had an oral contract with Mattapan Community Centers Inc. and the Commissioner of Boston Centers for Youth & Families ("BCYF") / City of Boston.

8. Defendants claims, MTD ¶ 5 *" nor does he allege any enforceable contract against the City on the part of the organization he was a part of since a lease or other long-term contract with a municipality must be in writing and conform to other statutory criteria*".

9. Defendants  already filed a motions to dismiss under 12(b)(6) (No. 13) and the Court, instead allowed Plaintiff file an AC to correct the deficiencies in the pleadings (No. 26) the defendant renewed their motions to dismiss  and never asserted that plaintiffs new SACompl  did not cure the defects of the earlier one, in light of the amendments to the Plaintiffs complaint, the deficiencies pointed out in Defendants' First & Second MTD have been cured Defendants' motion (No. 38) to dismiss shood be MOOT." Kolker v. Hurwitz, 269 F.R.D. 119, 125 (D.P.R. 2010), Igartúa v. Toledo CIVIL NO. 09-1923 (JP) (D.P.R. Jun. 9, 2010), Nash v. Soc. Sec. Admin. Case No. 17-11276 (E.D. Mich. Jun. 23, 2017), Dear v. Trojan Horse, Ltd. CIVIL NO.: WDQ-13-1345 (D. Md. Jan. 29, 2014).Therefore, the Defendants' arguments are for all counts are barred from consideration now since the Defendants already raised this argument during their First MTD and plaintiff cured these deficiencies.

ARGUMENT

10. Defendants' states in their First & Second MTD *"The contract claims must fail because Mr. Veal does not allege any contract between himself and the City,* Plaintiff clearly stated in his SACompl ¶ page 1 "their

conduct deprived the plaintiff who had an oral contract with Mattapan Community Centers Inc. and the Commissioner of Boston Centers for Youth & Families ("BCYF") / City of Boston.

11. Defendants claims, MTD ¶ 5 *" nor does he allege any enforceable contract against the City on the part of the organization he was a part of since a lease or other long-term contract with a municipality must be in writing and conform to other statutory criteria*".

PLAINTIIFS MGL 93 CLAIM

12. Defendants contradict their statements that plaintiff never had an oral contract they state, "The City, the BCYF, and the Defendant City employees were undoubtedly serving a government purpose and not intending to make a profit when *they orally agreed to allow the Plaintiff to run a community center for the City's youth*". See Defendants MTD  ¶ page 19.

13.  Defendants' states  in their MTD ¶ page 5, 20 "The G.L. c. 93A claim must fail both because the Plaintiff has not alleged that the City Defendants' behavior was unfair under the meaning of the statute, See SA*Compl.* ¶ 21,  and because a municipality is not amenable to suit under c. 93A when it is serving a governmental purpose.

Municipal Liability The City Was Engaged in Trade or Commerce.

14. The City defendant where not acting under legislative mandate but was motivated by the City defendant's business and personal reasons they engaged in trade and  commerce as a person "A municipality is subject to liability under 93A where it is 'acting in a business context', which is determined by consideration of 'the nature of the transaction, the character of the parties involved and [their] activities ... and whether the transaction was motivated by business reasons.' " City of Revere v. Boston/Logan Airport Assocs., LLC., 443 F.

Supp. 2d 121, 128 (D. Mass. 2006) (Gorton, J.) (alteration and omission in original) (quoting Park Drive Towing,

Inc. v. City of Revere, 442 Mass. 80, 86, 809 N.E.2d 1045 (2004) )., *Brooks v. Martha's Vineyard Transit Auth.*,

433 F. Supp. 3d 65, 78 (D. Mass. 2020). Max–Planck–Gesellschaft Zur Föerderung Der Wissenschaften E.V. v.

Whitehead Inst. for Biomedical Research, 850 F. Supp. 2d 317 (D. Mass. 2011),

15. Plaintiff clearly states in his SA*Compl.* ¶15 that "*The City defendant's municipality amenable to suit under c.*

*93A because the City defendants acted in a business context when it sought to terminate Plaintiffs Oral*

*contract &  Lease from a piece of property that it had because that action would allow it to secure more*

*money for the lease and programs of the property than it would otherwise obtain if it did not enforce the*

*termination of plaintiffs oral contract and  Lease, The City defendants was looking to increase its profits from*

*the use of the city owned property they leased to plaintiff for and to gain money from the programs plaintiff*

*created* (See Exhibit 1)".

16. Here, the mere fact that the City's termination of Plaintiffs oral contract does not compel a determination

that its conduct was "motivated by legislative mandate". To the contrary, the City's desire to unburden the

Plaintiff of the oral contract was motivated primarily by the potential for a more profitable conveyance of the

property. "Furthermore, while disposition of municipal realty is statutorily permitted, it would be difficult to

describe it as a "primary" government function. Consequently, the Court should conclude that

the City's actions in this case occurred within a business context. Quoting *City of Revere v. Boston/Logan*

*Airport Associates, LLC*, 443 F. Supp. 2d 121, 129 (D. Mass. 2006), the City's unfair conduct was `immoral,

unethical, oppressive and unscrupulous, and resulted in `substantial injury to plaintiff whom was a competitor

and other business [persons]See Boyle v. Int'l Truck Engine Corp., 369 F.3d 9, 15 (1st Cir. 2004) (citations

omitted)." *City of Revere v. Boston/Logan Airport Associates, LLC*, 443 F. Supp. 2d 121, 129 (D. Mass. 2006).

17. The City defendant's decision to terminate plaintiffs' oral contract having executed an oral contract in which it expressly promised to acknowledge the contract and put it in writing manifested a serious disregard for the rights of Plaintiff, the City negated the oral contract for an ulterior, extortionate profitable purposes See *City of Revere v. Boston/Logan Airport Associates, LLC*, 443 F. Supp. 2d 121, 130 (D. Mass. 2006).

18. The defendants claim in (Both) their MTD "*The G.L. c. 93A claim must fail both because the Plaintiff has not alleged that the City Defendants' behavior was unfair under the meaning of the statute,*  Plaintiff stated on page 5 line 21 that "*all Defendants' behavior was unfair under the meaning of the statute MGL 93a, as plaintiff was a party to the contract*" SACompl.¶ 21.

19. Plaintiff stated a claim under 93A SACompl ¶ 188-199 City defendants trying to muddy the waters with two almost identical MTD and Facts that are not in the record, at the juncture of the case plaintiff has alleged all facts to state a claim under 93A.

20. Plaintiffs allege that I sent a written demand for relief at least thirty days prior to filing suit. "A demand letter listing the specific deceptive practices claimed is a prerequisite to suit and as a special element must be alleged and ultimately proved plaintiff does not have to prove his whole case at the motion to dismiss stage." *Tomaselli v. Beaulieu*, 967 F. Supp. 2d 423, 451 (D. Mass. 2013).

21. A willful breach of contract for the purpose of securing "unbargained-for benefits" gives rise to liability under Chapter 93A . NASCO, Inc. v. Pub. Storage, Inc.,29 F.3d 28, 34 (1st Cir. 1994). See also Anthony's Pier Four, Inc. v. HBC Assocs.,583 N.E.2d 806, 821 (Mass. 1991) (citations omitted); Atkinson v. Rosenthal,598 N.E.2d 666, 670 (Mass.App.Ct. 1992) (summarizing rule that, in order for a breach of contract to constitute an unfair act under Chapter 93A , the breach must be used "as a lever to obtain advantage for the party committing the breach in relation to the other party; i.e., the breach of contract has an extortionate quality that gives it the

rancid flavor of unfairness").*City of Revere v. Boston/Logan Airport Associates, LLC*, 443 F. Supp. 2d 121, 129 (D. Mass. 2006).

22. Plaintiff has stated "he sent all defendants a MGL 93A with the pre-suit notice required by <u>Mass. Gen. Laws ch. 93A , § 9(3)</u>")", The City defendants  were motivated by business (Profit) or personal reasons not legislative mandate and were engaged in trade & commerce it acted in a 'business context and was a person.' " Id. (quoting Lantner v. Carson, 374 Mass. 606, 611, 373 N.E.2d 973 (1978))" *Tomaselli v. Beaulieu*, 967 F. Supp. 2d 423, 452 (D. Mass. 2013), and that their actions were unfair & deceptive and laid out how and why they were.

BREACH OF CONTRACT

23. The elements of a breach of contract claim are "first, the existence of the contract , whether express or implied; second, the breach of an obligation imposed by that contract ; and third, the resultant damage to the plaintiff." <u>VLIW Tech, L.L.C. v. Hewlett-Packard Co.</u>, <u>840 A.2d 606, 612</u> (Del. 2003). Plaintiffs' complaint, alleges the existence of a contract between him and the City of Boston, with several provisions,

24. The Plaintiff demonstrated 1) that the parties had a contract supported by valid consideration, that the defendants breach thereby and that they caused plaintiff damage" *City of Revere v. Boston/Logan Airport Associates, LLC*, 443 F. Supp. 2d 121, 126 (D. Mass. 2006)

25. All Defendants  arguments that plaintiff has failed to plead a plausible breach of contract claim must fail, Plaintiff's complaint against all defendants creates, at least, a plausible inference that there exist a contracts between City of Boston, Bonnie Thomas Bow and Thomas Bowe CPA and that these defendants have breached those contracts. Plaintiff identified specific provisions of the contract that was allegedly breached, While Plaintiff is "not required to outline all the elements of the claim, plaintiff provide enough

factual allegations to draw the reasonable inference that the elements exist  Plaintiffs specify contractual duty

owed to me by defendants, Plaintiff also identified what provisions were breached and provide factual

allegations about the terms of the contract, accordingly, my breach of contract claim should be deemed

survived their motion to dismiss .

26. Defendant's state is their MTD page ¶15 that "he alleges that an oral contract was formed by himself and

Defendant Bognanno on behalf of the City and MCCI in 2003 to lease the community center building for

twenty years in order to operate a community center. Accepting as true the allegation that Ms. Bognanno

made an oral agreement with Mr. Veal to lease the community center building to him and MCCI for a period

of twenty years, that would not constitute a valid contract made in compliance with statutory requirements

for municipal contracts and by a person with authority to bind the City and commit the continued use of a City

building to MCCI. See e.g., Int'l Salt Co., LLC v. Boston, 590 F.3d 1, 6 (1st Cir. 2009)" See City Defendant MTD

page ¶7 .

27. The above caselaw is irrelevant and cited in contradiction, Salt Co., LLC v. Boston, 590 F.3d 1, 6 (1st Cir. 2009)

is a case of the City of Boston ("City") in a dispute over payment for road salt that the company supplied

during the winter of 2004-05 that they had a written contract with City of Boston,  the City demanded more

salt at the same price and a dispute came about, this case has nothing to do with the current case, it is based

on the Massachusetts Uniform Procurement Act that was used under the Act's emergency provisions; See

*Intern. Salt Co. v. City of Boston*, 590 F.3d 1, 2 (1st Cir. 2009).

28. Defendants stated See City Defendant MTD page ¶7 " "It is well established that "[i]n Massachusetts, a party

seeking to enter into a municipal contract has the responsibility of knowing the limitations on a municipality's

contracting power, and such party cannot recover on a contract that does not comply. Id., at 6 (citation

omitted). Massachusetts courts "have consistently and punctiliously held that one dealing with a city or town

cannot recover if statutory requirements such as are contained in the [city's] charter have not been

observed." United States Leasing v. City of Chicopee, 402 Mass. 228, 231 (1988) (citations omitted).

29. Again The City Defendant cited irrelevant caselaw in contradiction (See City Defendant MTD page ¶8,  United

States Leasing v. City of Chicopee, 402 Mass. 228, 231 (1988)) case is about the City of Chicopee entering into

a written contract for leasing a computer system, signed by a city's superintendent of schools and its

purchasing agent and approved by its school committee, was an ordinary commercial contract, and not an

educational matter falling within a school committee's traditional area of exclusive control" *United States*

*Leasing Corp. v. Chicopee*, 402 Mass. 228 (Mass. 1988)

30. Defendants stated in their MTD page ¶8,  "A party dealing with a public employee must, "at its peril" ascertain

the extent of statutory authority possessed by the employee. Potter & McArthur, Inc. v. City of Boston, 15

Mass. App. Ct. 454, 459 (1983), citing Wormstead v. Lynn, 184 Mass. 425, 428 (1903). A city is not estopped

by a violation of duty on the part of a city employee. Id. The City defendants continue to rely on and cite

irrelevant caselaw in the MTD brief the above case is about " A fixed fee contract by the city of Boston for

naval architectural services, under which the architect was to receive a series of partial payments, and which

provided that the architect's performance could be discontinued by the city's fire commissioner at any time

and would be discontinued in the event the city did not commence construction of a fireboat within a

specified period See *Potter McArthur, Inc. v. Boston*, 15 Mass. App. Ct. 454 (Mass. App. Ct. 1983), defendants

also cited irrelevant case law above citing Wormstead v. Lynn, 184 Mass. 425, 428 (1903)" This is an action for

damages for breach of a contract in which the plaintiff's claim was that the defendant city agreed to pay him

for riprapping an embankment as part of the work necessary to carry into effect an order for widening a

public way within the city limits. The breach relied on was a refusal on the part of the defendant to allow the

plaintiff to do any work at all under the alleged contract. The defense set up was that it never entered into any contract with the plaintiff See *Wormstead v. Lynn*, 184 Mass. 425 (Mass. 1903).

31. Defendants' states MTD page ¶8 "First, Ms. Bognanno does not have the authority to grant to any entity the right to occupy and use a City building for twenty years. Such an arrangement is by definition a lease. Under the Boston City Charter, authority to lease City property belongs to the Public Facilities Commission, see Ma. St. 1966. c. 642, s. 12, or to whichever City department it transfers care, custody and control of the relevant building. Ms. Bognanno is not alleged to be the head of any department"., Defendant Lorna is the Regional Manager, Operations at The City of Boston, and a person (Color of State / Law actor) for whose conduct the City of Boston was responsible for she had the power to make official policy on issues in this complaint under Mayor Menino and she did.

32. Defendants' states MTD page ¶8 "Second, Massachusetts law requires that the type of contract that Mr. Veal alleges be in writing - not oral. In Massachusetts, no interest in property with a set duration other than "at will" can be created orally, without a written instrument signed by the owner or their attorney. G. L. c. 183, s. 4.7 Moreover, all contracts entered into by the City when the amount involved is over $10,000 are required to be in writing. See G. L. c. 30B, s. 12&17 and St. 1890, c. 418, § 6, as amended by St. 1939, c. 156 § 2 & St. 1998, c. 262, § 1 ("contracts made by any department of the City of Boston or by any officer,. . . shall, when the amount involved is $10,000 or more, . . . be in writing"). The Supreme Judicial Court of "construed the phrase 'amount involved' in procurement statutes to be intentionally imprecise and concluded that it refers to the value to the contractor, no matter the source." Park Drive Towing, Inc. v. City Of Revere, 442 Mass. 80, 85 (2004). Defendants cited irrelevant case law above (Contradiction) no department made a contract with plaintiff individuals did Lorna and Mayor Menino and the contract was not for $10,000 or more this case law id irrelevant See *Intern. Salt Co. v. City of Boston*, 590 F.3d 1, 6 (1st Cir. 2009).

33. The pertinent statute here, ""All contracts made by any department of the city of Boston . . . shall, when the amount involved is two thousand dollars or more, . . . be in writing; and no such contract shall be deemed to have been made or executed until the approval of the mayor of said city has been affixed thereto in writing." *Urban Transport, Inc. v. Mayor of Boston*, 373 Mass. 693, 695-96 (Mass. 1977), B R Realty v. Springfield Redevelopment, 708 F. Supp. 450 (D. Mass. 1989),  Potter McArthur, Inc. v. Boston 446 N.E.2d 718 (Mass. App. Ct. 1983), Boston Gas Co. v. Boston, 13 Mass. App. Ct. 408 (Mass. App. Ct. 1982) plaintiffs' contract wasn't $2000 or more therefore the oral contract is binding .

PLAINTIFF 1981 CLAIM

34. The defendants claim in (Both) their MTD "*The civil rights claims must fail because Mr. Veal has failed to allege sufficient facts to demonstrate the required elements: there is neither discrimination nor retaliation against him for a 42 U.S.C. § 1981 claim*"Plaintiff disagrees I have claimed discrimination and retaliation, but I do agree with the defendants that "The First Circuit rested its decision on that of the Supreme Court in Jett v. Dallas Independent School District, which held that "§ 1981 does not provide an implied private right of action for damages against such officials and that 'the express cause of action for damages created by [42 U.S.C.] § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.'" Id. at 70–71 (quoting Jett 491 U.S. at 733 (1989). Plaintiff compels the dismissal of the claim for damages against the City and its employees under § 1981 for alleged violations by state actors in their official capacities.

35. Plaintiff acknowledges that Jett, standing alone, precludes a § 1981 claim against a municipality, however, that Jett was superseded by the Civil Rights Act of 1991, which amended § 1981 by adding two subsections,

by contrast, the Jett Court held that § 1981 created an implied cause of action against private actors because no other federal statute provided a remedy against them. Jett, 491 U.S. at 732.

36. Plaintiff has dropped the City of Boston claim for 42 USC 1981 See SACompl page 25, but all the other defendants can be charge as private actors under 42 USC 1981.

37. Since its enactment, the first circuit have considered whether the Civil Rights Act of 1991 created an implied private right of action under 42 USC 1981. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1214 (9th Cir. 1996) ("[W]e conclude that the amended 42 U.S.C. § 1981 contains an implied cause of action against state actors, thereby overturning Jett's holding . . . ."). Id. at 1213 (emphasis in original). Because § 1981(c) implied a right of action against private defendants, the Ninth Circuit found that a comparable remedy was necessary to achieve "parallel protection" for suits against public defendants. See id.

38. If any defendant is considered not a private actor plaintiff points the court to the ninth circuit "Ninth Circuit's opinion in City of Oakland. In finding that § 1981(c) contained an implied remedy against state actors, the Ninth Circuit Court reasoned that the goal of § 1981(c) was to ensure "that § 1981 rights are to receive parallel protections against state actors and private actors." Id. at 1213. Accordingly, the court stated: Because § 1981(c) affords identical protection against "impairment by nongovernmental discrimination" and "impairment under color of State law," and because § 1981(c) implicitly codifies an implied cause of action against private defendants, we infer that § 1981(c) also contains an implied cause of action against state actors who "impair" a claimant's § 1981 rights

39. The Ninth Circuit placed great weight on the inclusion of language protecting § 1981 rights from impairment by both private and governmental entities. See City of Oakland, 96 F.3d at 1213.

40. Because Plaintiffs complaint alleged that the City's employees acted pursuant to an official policy or custom, In Monell v. New York Department of Social Services, 436 U.S. 658 (1978), the District Court should not dismiss his 1981 claim.

41. Plaintiff should be entitled to discovery in order to marshal facts to support his theory that the City discriminated against him pursuant to an official policy or custom Plaintiff in his Governing complaint does allege that the City maintained a policy or custom to retaliate against or otherwise mistreat plaintiff such an allegation, Plaintiff has stated a prima facie case, and the Court should permit discovery. See Marran v. Marran, 376 F.3d 143, 156 (3d Cir. 2004)

PLAINTIFFS 42 U.S.C. § 1983

42. "Traditionally, the requirements for relief under [§] 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991). Or, more simply, courts have required plaintiffs to "plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986); see also Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); WMX Techs., Inc. v. Miller, 197 F.3d 367, 372 (9th Cir. 1999) (en banc); Ortez v. Washington County, Or., 88 F.3d 804, 810 (9th Cir. 1996)

43. Plaintiff has plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009); see also Starr v. Baca, No. 09-55233, --- F.3d ---, 2011 WL 2988827, at *2-*3 (9th Cir. July 25, 2011)

44. Plaintiff alleged the constitutional deprivation was the product of a policy or custom of the local governmental unit (City of Boston), because City liability rest on the actions of the City, Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011).

45. *The* choice among alternatives by the municipal official defendants with final decision-making authority may also serve as the basis of municipal liability to the plaintiff. See Pembaur v. City of Cincinnati, 475 U.S. 469, 482-83 (1986); Waggy, 594 F.3d at 713 (explaining that a policy has been defined as a deliberate choice, made from among various alternatives, to follow a course of action); Long, 442 F.3d at 1185; Fairley, 281 F.3d at 918; Oviatt, 954 F.2d at 1477; Thompson, 885 F.2d at 1443.

46. *The City defendants* had final policy-making authority, *the* ratification of the decisions of a subordinate by an official of the City defendants with final decision-making authority can also be a policy for purposes of municipal liability under § 1983. See Praprotnik, 485 U.S. at 127; Trevino v. Gates, 99 F.3d 911, 920-21 (9th Cir. 1996); Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

47. Even if there is not an explicit policy, the plaintiff may establish municipal liability upon a showing that there is a permanent and well-settled practice by the municipality which gave rise to the alleged constitutional violation. See City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); Navarro v. Block, 72 F.3d 712, 714-15 (9th Cir. 1996); Thompson v. City of Los Angeles, 885 F.2d 1439, 1444 (9th Cir. 1989), overruled on other grounds by Bull v. City & County of San Francisco, 595 F.3d 964 (9th Cir. 2010).

48. The plaintiff has demonstrated that a custom existed, the plaintiff need not also demonstrate that "official policy-makers had actual knowledge of the practice at issue." Navarro, 72 F.3d at 714-15; Thompson, 885

F.2d at 1444. But see Blair v. City of Pomona, 223 F.3d 1074, 1080 (9th Cir. 2000) ("open to the [municipality] to show that the custom was not known to the policy-makers").

49. Plaintiffs provided the grounds of his entitlement to relief, Court previously held that "a claim of municipal liability under §1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" Karim-Panahi v. L.A. Police Dep't., 839 F.2d 621, 624 (9th Cir. 1988) (quoting Shah v. County of Los Angeles, 797 F.2d 743, 747 (9th Cir. 1986)); see also Evans, 869 F.2d at 1349; Shaw v. Cal. Dep't of Alcoholic Beverage Control, 788 F.2d 600, 610 (9th Cir. 1986) ("[I]t is enough if the custom or policy can be inferred from the allegations of the complaint.").

50. The City defendants deprived plaintiff of a constitutional right, "within the meaning of § 1983, when they committed the affirmative act of stating plaintiff was under investigation by the AG office and terminated the contract under the bases plaintiff have violated state and federal law, they participated affirmative acts or omits to perform an act which they are legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)); see also Redman v. County of San Diego, 942 F.2d 1435, 1439-40 (9th Cir. 1991) (en banc); Stevenson v. Koskey, 877 F.2d 1435, 1438-39 (9th Cir. 1989); Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). Plaintiff have shown all the City Defendants personally participation the supervisor City defendants Morales, Lorna ,Michael participated in and directed the violations, or knew of the violations and failed to act to prevent them, Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009).

51. Defendant's state MTD ¶ 12 "Mr. Veal Has Not Sufficiently Alleged That He Had a Property Interest As Required To State a Claim For a Due Process Violation Under 42 U.S.C. § 1983" then Defendants state in their

motions to dismiss MTD ¶ 12 (Contradicting statements) that*" Here, Plaintiff alleges that Defendants deprived him of his property interest in continued employment by MCCI supported by its right to operate out of a BCYF building (or arguably his property interest in the purported oral lease), in violation of his right to due process of law. Compl. ¶¶ 24, 26, 47, 180".* "Plaintiff's case is similar to Bleeker v. Dukakis, in which the First Circuit found that the plaintiff, an at will employee with an oral agreement, did not have a property interest in his continued employment within the meaning of the Fourteenth Amendment to support a due process claim. 665 F.2d 401, 403 (1st Cir. 1981)".*

52. Plaintiff clearly stated SA Compl. ¶ 177 *"Plaintiff had a Property Interest in his continued Employment and had a Liberty Interest in his Reputation, As Required To State a Claim For a Due Process Violation Under 42 U.S.C. § 1983.

53. Defendant's is quoting Bleeker v. Dukakis in contradiction to plaintiff current case, in Bleeker v. Dukakis the plaintiff Bleeker was an employee plaintiff never claimed to be an employee of any of the defendants. Bleeker v. Dukakis both parties agree that the oral agreement stated that there was an employer employee relationship, and the employer *could dismiss him if, in their judgment, he did not perform satisfactorily,* plaintiff never stated such he was an at-will employee, the City Defendants attempts to blur the distinction between Bleeker v. Dukakis, and this current case is like comparing Apples to Oranges this caselaw stated is in contradiction.

54. This criterion for dismissal is sufficiently broad and subjective to warrant characterizing Bleeker's employment contract as one that did not provide for removal only "for cause" but rather allowed for removal "at will." An interest in mere "at will" employment, of course, is not constitutionally protected "property. *"See Bishop v. Wood,*426 U.S. at 344-47, 96 S.Ct. at 2077-79; *Beitzell v. Jeffrey,*643 F.2d at 874., *Bleeker v. Dukakis,* 665 F.2d 401, 403 (1st Cir. 1981).

55. Plaintiff identified the municipal policy or custom that caused his injuries SACompl ¶ 24 also

"See, *e.g.*, *Pembaur* v. *Cincinnati*, <u>475 U.S. 469, 480-481</u>." *Board of Comm'rs of Bryan County v. Brown*, 520

U.S. 397 (1997)*,* he plaintiff has also demonstrated that, through the City Defendants *deliberate* conduct, the

municipality was the "moving force" behind the injury alleged See SAM Line 3,4,5,6, 16, 86, 98, 121, 134,

137.151, 181, 215 also See "*Monell* v. *New York City Dept. of Social Servs.* at 694," *Board of Comm'rs of Bryan*

*County v. Brown*, 520 U.S. 397 (1997).

56. Plaintiff also identified the City Defendants (municipality) action was taken with the requisite degree of

culpability and there was a direct causal link between the municipal action and the deprivation of federal

rights, SACompl ¶ *151, 179, 182, 207, 212* this is required application of rigorous culpability and causation

standards in order to ensure that the City defendants are held liable solely for its employees' actions.

In *Canton* v. *Harris*, <u>489 U.S. 378</u>" *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 398 (1997)

57. The plaintiff establishes an affirmative causal link between the municipal policy or practice and the alleged

constitutional violation. See City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 391-92 (1989); Van Ort v. Estate

of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996); Oviatt v. Pearce, 954 F.2d 1470, 1473-74 (9th Cir. 1992).

58. At this stage of the case the plaintiff has alleged that the City defendants' actions were not simply negligent

SACompl ¶ 133 but was taken with deliberate indifference as to its known or obvious consequences, SACompl

¶151 & 181  *Id.*, at 388 , *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 398 (1997).

59. liability should be imposed on the City Defendants because their *deliberate* action attributed moving force

behind the plaintiff's deprivation of my State & Federal rights. *Monell* v. *New York City Dept. of Social*

*Servs.*, <u>436 U.S. 658, 694</u> (1978)." *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 400 (1997).

60. Defendant Martin Joseph Walsh ("Mayor") decision to implement new City policies from recommendations

from Michael Sulprizio ("Michael") and other Joh Does carried out by Lorna Bognanno ("Lorna"), William

Morales ("Morales")  Jane Doe" and "John Does no matter who they deprived of due process including the

plaintiff because previous city administrations made oral and written contract without may be proper lawful

or city policy in mind triggered municipal liability, under § 1983. *Id.*," *Board of Comm'rs of Bryan County v.*

*Brown*, 520 U.S. 397, 401 (1997).

61. Plaintiffs identified a municipal "policy" or "custom" that caused the plaintiff's injury SACompl ¶ 16,

21,*23,24,26, Exhibit 1* SACompl  *also See Monell, supra*, at 694; *Pembaur, supra*, at 480-481; *Canton, supra*, at

389.

62. The U.S. Supreme Court ensured that a municipality can be held liable for those deprivations resulting from

the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be

those of the municipality. *Monell, supra*, at 694. Similarly, an act performed pursuant to a "custom" that has

not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on

the theory that the relevant practice is so widespread as to have the force of law. <u>436 U.S., at 690-</u>

<u>691</u> (citing *Adickes* v. *S. H. Kress Co.*, <u>398 U.S. 144, 167-168</u> (1970)), *Board of Comm'rs of Bryan County v.*

*Brown*, 520 U.S. 397, 403-04 (1997).

63. City Defendants claims MTD ¶ 2 "that the Plaintiff did not sufficiently allege that he had property or Liberty

interest, engage in protected conduct  he had a property interest under 42 USC 1983 or Defendants violated

§1983 by denying the Plaintiff his due process rights when they terminated the oral contract. Plaintiff stated

SACompl ¶ 14, 22, 24 "*Plaintiff engaged in a Protected Conduct and is a member of a protected class as*

*required by 42 USC 1981, 1983 and other counts in my complaint that the conduct I engaged in was*

*constitutionally protected, and that it was a substantial or motivating factor for the City defendants".* SACompl

¶ 177 "Plaintiff had a Property Interest in his continued Employment and had a Liberty Interest in his

Reputation, As Required To State a Claim For a Due Process Violation Under 42 U.S.C. § 1983".

64. The City Defendants claim "Mr. Veal also asserts a 42 U.S.C. § 1983 claim, premised on the allegation that the Defendants committed defamation, which infringed upon his liberty right to his reputation, violating his constitutional right to due process under the Fourteenth Amendment. Compl. ¶ 169" Defendants can't be looking at plaintiff original or SACompl complaint, I never once used the word defamation SACompl ¶ 169 it states, " As a result of defendant's discrimination and retaliation in violation of Section 1981, the Plaintiff have been denied employment due process thereby entitling Plaintiff to injunctive and equitable monetary relief an award of punitive damages".

65. Defendants stated on page 14 & 15 "*The Plaintiff Has Not Sufficiently Alleged That He Engaged In Protected Conduct As Required To State A Claim For Retaliation Under 42 U.S.C. § 1983*". "*To establish a presumption of retaliation under 42 U.S.C. § 1983, the Plaintiff must allege that the conduct he engaged in was constitutionally protected, and that "it was a substantial or motivating factor" of the City.*" Plaintiff clearly stated this SACompl ¶ 14, 22.Defendants stated on page 15 of their MTD "To establish a presumption of retaliation under 42 U.S.C. § 1983, the Plaintiff must allege that the conduct he engaged in was constitutionally protected, and that "it was a substantial or motivating factor" Plaintiff did so SACompl ¶ 22, 52, 137, 207, 212.

66. The U.S Supreme Court has recognized a § 1983 cause of action can be based on a *single decision* attributable to a municipality only where the evidence that the municipality had acted, and that the plaintiff had suffered a deprivation of federal rights also proved fault and causation. See, *e.g., Pembaur, supra*, at 481. Also See *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 398 (1997).

67. "Plaintiff's allegations against the City defendants states a claim under § 1983 because of the conduct is somehow attributable to the state" *McGillicuddy v. Clements*, 746 F.2d 76, 77 (1st Cir. 1984).

BREACH OF CONTRACT

68. At this point in the litigation, Plaintiff has in fact provided Defendants and the Court with considerable

information regarding the alleged oral contracts. Plaintiff has provided the names of Defendants '

representatives and Lorna and Mayor Menino who allegedly entered into the verbal agreements

with Plaintiff during the relevant time period. (Doc. No. 13 ¶¶ 12, 21.) In addition, Plaintiff alleges a number of

contractual terms as referenced above in the Amended Complaint and a description of how the oral contract

was breached. Reading the Amended Complaint in the light most favorable to Plaintiff , the Court should

conclude that Plaintiff has adequately shown the plausible existence of a breach of contract claim at the MTD

stage. *Always in Serv., Inc. v. Supermedia Servs. - East, Inc.*, No. 11-127, at *12 (E.D. Pa. Mar. 5, 2012)

69. Plaintiff alleged the facts about the terms and obligations of the contract and what obligations the parties

owed to one another under the contract these are factual enhancement critical to a properly pleaded

complaint *Alston v. Commonwealth of Massachusetts*, 661 F. Supp. 2d 117, 124 (D. Mass. 2009) SA Compl

. *Doyle v. Hasbro, Inc.*, <u>103 F.3d 186, 194-95</u> (1st Cir. 1996); *Gibbs v. SLM Corp.*, <u>336 F.Supp.2d 1, 16</u> (D.Mass.

2004), *Alston v. Commonwealth of Massachusetts*, 661 F. Supp. 2d 117, 124 (D. Mass. 2009)

70. Plaintiff never made statements to the City refusing to leave or negotiating against some of the terms the City

was requiring for continued occupancy plaintiff stated that he wanted his oral contract in writing 1 time and

Morales, Lorna promised me and stated, "*I would get a written contract in the next few months that reflected

the oral agreement between Plaintiff, Mattapan Defendants Lorna , City and BCYF but they failed to do so*",

SACompl ¶ 71 soon after City defendants never took a meeting with me again, I received the terms and

conditions of the new contract from the office floating around.

71. Defendant Morales informed plaintiff that "he needed to cut all ties and will reevaluate the situation after he

sees the outcome of the investigation by the attorney General regarding me the Plaintiff or Mattapan"

SACompl ¶ 98,99. Michael Sulprizio ("Michael"), Lorna Bognanno ("Lorna"), Thomas Bowe C.P.A PC, Thomas Bowe ("Thomas") all stated that the reason they where terminating the contract with me because I had violated State & Federal law and I was a liability as the Attorney General had me and Mattapan under Investigation.

72. Defendants Morales, Lorna, Michael, Thomas, mayor, city denied even meeting with the plaintiff SACompl ¶ 102 and terminated the contract under false pretenses, the City defendants stated that "it had come their attention that Mattapan board had voted to give a family member a <u>First Mortgage</u> and it was presented as a fund-raising opportunity SACompl ¶ 103. This was the only and the official reason for the termination. See Exhibit 1 attached.

73. "Defendant Thomas and Thomas CPA informed plaintiff he would be retiring soon and that I should start looking for another CPA firm, this was contrary to all counts in the complaint he knew at the time he did not plan on retiring, as he is servicing several community centers of Defendant City and BCYF as they promised him if he would find a reason defendant could terminate plaintiff's oral contract.

74. The courts should find that at this stage of the case plaintiff has alleged a proper Breach of contract claim against all defendants.

UNJUST ENRICHMENT

75. Defendants states the plaintiff Unjustly Enriched is Barred by Massachusetts Case Law and Also Fails to Allege Any Required Elements.

76. Unjust enrichment provides a cause of action for a plaintiff without an adequate remedy at law. <u>See Santagate v. Tower</u>, <u>64 Mass.App.Ct. 324</u>, <u>833 N.E.2d 171, 176</u> (2005) ; <u>see also Bos. Med. Ctr. Corp. v. Sec'y of Exec. Office of Health & Human Servs.</u>, <u>463 Mass. 447</u>, <u>974 N.E.2d 1114, 1132</u> (2012) To recover

for unjust enrichment, the plaintiff "must establish not only that the defendant received a benefit, but also that such a benefit was unjust ." Metro. Life Ins. Co. v. Cotter, 464 Mass. 623, 984 N.E.2d 835, 850 (2013). The measure of damages for unjust enrichment is "the reasonable value of the benefit conferred." Nassr v. Commonwealth, 394 Mass. 767, 477 N.E.2d 987, 991 n.4 (1985).*Baker v. Equity Residential Mgmt., L.L.C.*, 390 F. Supp. 3d 246, 258 (D. Mass. 2019)

77. Plaintiff alleged all required elements SACompl ¶ 59, 199, 201-205, I stated that the defendants terminated the contract on hearsay and kept all the profit-making benefits of the program that plaintiff built over 15 years and all the future profits without cause to do so a benefit conferred upon the defendant by the plaintiff" *Stevens v. Thacker*, 550 F. Supp. 2d 161, 165 (D. Mass. 2008) all defendants had the knowledge of the benefit plaintiff would lose *Stevens v. Thacker*, 550 F. Supp. 2d 161, 165 (D. Mass. 2008) this and all defendants action in plaintiffs SA Compl was unjust. "benefit by the defendant under circumstances which make such acceptance or retention inequitable" *Stevens v. Thacker*, 550 F. Supp. 2d 161, 165 (D. Mass. 2008)

78. plaintiff will prove through discovery that the defendant knew that it had received a benefit and inequitably retained it, at this stage of the case plaintiff does not have to prove all the evidence because the evidence is in the defendant possession.

42 USC 1985

79. Defendants stated, "Mr. Veal's failed to state the cause of actions under § 1985.16 Subsection (3) of the statute prohibits "two or more persons in any State or Territory [from] conspire[ing to] ... depriv[e] ... any person or class of persons of the equal protection of the laws." Perez-Sanchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008) (quoting 42 U.S.C. § 1985(3)). The plaintiff's prima facie case must satisfy the four-part requirement of the statute by alleging and proving: (1) a conspiracy; (2) for the purpose to deprive the

plaintiff of the equal protection of the laws; (3) an overt act in furtherance of the conspiracy; and (4) either

injury to person or property, or a deprivation of any right or privilege of a citizen of the United States. United

Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983); Parker v. Landry, 935 F.3d 9, 18 (1st Cir.

2019)

80. The case law that the City Defendants quote Perez-Sanchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir.

2008), Carpenters, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983),Parker v. Landry, 935 F.3d 9, 18 (1st Cir.

2019) is irrelevant because it was on a summary judgment not a 12(b)(6) motion to dismiss the party's had a

chance for full discovery to flush out all matters of the case, here plaintiff is at the motion to dismiss stage,

this case law is quoted in contradiction to the current case.

81. Plaintiff alleged that there was a conspiracy among all at least 6 defendants , an act done in furtherance

thereof, and a resultant injury to persons and property, that the State was involved in the conspiracy and that

the aim of the conspiracy was to influence the activity of the State and its new policy it wanted to implement

this is the kind of animus that § 1985(3) (See *Carpenters v. Scott*, 463 U.S. 825, 830-31 (1983)requires and

plaintiff has plead it in his SA Compl ¶ 48, 113, 114, 208-211.

82. Plaintiff alleges facts that would permit the court plausibly to infer an agreement among the Defendants,

motivated by some discriminatory animus, to deprive him of his rights see SA Compl.

83. Defendants incorrectly state "Mr. Veal must plead his protected right was injured due to the interference by

the alleged discriminatory conspiracy" Plaintiff did so SA Compl ¶ 208, Mr. Veal has not alleged an

enforceable contract and thus there are neither protected contractual rights nor any other protected rights

were interfered by the alleged conspiracy and cause of his injury, SA Compl ¶ 208 "There was an enforceable

oral contract and Lease between Plaintiff and City, BCYF thus they were protected contractual rights and

other Constitutional rights where protected and were interfered by the alleged conspiracy and cause Plaintiff injury".

84. Plaintiff has plead all the elements for a 1985 claims at this stage of the case and plaintiff 1985 claim should survive the motion to dismiss.

85. The US Supreme court stated "we conclude that he is entitled to an opportunity to offer proof". Allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient"... "which we hold to less stringent standards than formal pleadings drafted by lawyers." Haines v, Kerner, 404 U.S 519 (1972),

CONCLUSION

For the reasons set forth above, Plaintiff has stated a claim upon which relief can be granted. Therefore, Plaintiff respectfully request this Honorable Court not to grant all Defendants Motion to Dismiss Counts I, II, III, IV, V, VI, VII, VIII.

William Veal
/S/William Veal                              June 19, 2021
1434 Blue Hill Ave, APT 1
Mattapan, Ma 02126
617-908-5555
 Mrveal@yahoo.com

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered

participants as identified on the Notice of Electronic Filing and electronic copies will be sent through emails to

those indicated as non-registered participants on June 19, 2021.

William Veal
/S/William Veal                          June 19, 2021
1434 Blue Hill Ave, APT 1
Mattapan, Ma 02126
617-908-5555
 Mrveal@yahoo.com

VERIFICATION OF MOTION TO DISMISS

I, William Veal, declare as follows,

1. I have personal knowledge including those allegations set out in the foregoing complaint against all the

    defendants and if called upon to testify I would competently testify as to the matters stated herein plaintiff

    knows and  believes them to be true.

2. I verify and certify under penalty of perjury under the laws of the United States of America that the

    statements in this Complaint are true and correct. Pursuant to 28 U.S.C. § 1746(2), I William Veal hereby

    declare certify, verify, and state under penalty of perjury that the complaint is true and correct.

William Veal
/S/William Veal                                    June 19, 2021
1434 Blue Hill Ave, APT 1
Mattapan, Ma 02126
617-908-5555
 Mrveal@yahoo.com